STATE of Missouri, Plaintiff–
Respondent,

v.

Jon Raymond LYNCH, Defendant–
Appellant.

Jon Raymond LYNCH,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16836, 17314.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 3, 1991.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

Robert J. Maurer, Lew A. Kollias, Columbia, for defendant-appellant movant-appellant.

MAUS, Judge.

Defendant Jon Raymond Lynch was charged with forcible rape in violation of § 566.030. He testified. He admitted having sexual intercourse with the victim, but said it was consensual. The jury found him guilty. In accordance with the verdict, he was sentenced to imprisonment for five years. He states one point on direct appeal. He also appeals from the denial of his postconviction motion under Rule 29.15, alleging ineffective assistance of counsel.

The following is a condensation of the evidence sufficient for consideration of the defendant's point on appeal. The 19–year–old victim was a student at a college in Vernon County. She testified to the following. At about 9:30 p.m., on September 1, 1989, she was walking along Highway 54 to the home of Mr. Patrick, a friend. An-

other student was to meet her there. As she approached the road that turned from the highway to Mr. Patrick's house, the defendant, riding on a bicycle, overtook her. They walked together for a short distance. He introduced himself by giving his correct name and address. They talked as they walked. When they neared the road, he gave her a beer from his knapsack and took one himself. At the junction of the road and the highway, they stopped and sat on the side of the road to drink their beers. As she started to leave, the defendant grabbed her. He carried her to the ditch. There he forcibly raped her.

The defendant, in general, confirmed the victim's testimony up to the point where they sat on the roadside to drink their beers. He stated that while they were doing so, the victim kissed him and became sexually aggressive. They repaired to the ditch and consensually engaged in sexual intercourse. When a car came by, the victim became upset and started yelling "rape". He then left and proceeded down the highway to his home in Deerfield.

The victim testified that she got up and ran to Mr. Patrick's home. Her college friend arrived. They spent the night at Mr. Patrick's. The next day, she reported the rape.

The Vernon County Sheriff testified that upon his second interview, the defendant made statements which incriminated himself. The defendant testified that the sheriff misconstrued their conversation. He said that by leading questions the sheriff recited the victim's version of the facts, but that he, the defendant, did not admit they were true. In substance, he denied the incriminating statements.

The defendant's point on direct appeal is the court erred in overruling his motion for a mistrial and his motion for a new trial asserting jury misconduct for the reason "that a member of the appellant's jury, shortly following voir dire, made the following remarks to other members of the venire: 'Yes, we could have already convicted him if something (meaning voir dire) hadn't taken so long.'" That point has the following background.

The commencement of the defendant's trial was delayed by an evidentiary hearing upon a motion. The state then conducted a lengthy voir dire examination. This was followed by an even more lengthy voir dire examination by the defendant's counsel. The voir dire examination was completed a few minutes after 12 noon. The jury was then picked so the balance of the panel could be excused. The court then adjourned for the noon recess. After the noon recess, a jury of 12 reported to the courtroom.

Out of hearing of the jury, defendant's counsel reported to the court that at a local cafe, during the noon recess, two of the defendant's sisters overheard a comment by a person believed to be a member of the jury panel to others believed to be members of the jury panel. Counsel reported that from the description of the person making the comment, it was his opinion that person was on the jury. The comment was to the effect that "these proceedings are taking too long, we could have already convicted the guy and gone home by now." Counsel moved for a mistrial and offered to call the defendant's sisters to establish the facts reported to the court.

The sisters testified. Their testimony confirmed the report of counsel. That testimony is exemplified by the following.

"Q. Okay. Did one of them say something unusual that caught your attention?

A. They were all saying something about lunch being so late and everything and a man in a blue shirt that was sitting about four foot from me said—

Q. Excuse me one moment. Go ahead. What did he—

A. He said something like, 'Yeah, we could have already convicted him if something hadn't taken so long.' If— whatever it is when you pick the jury.

Q. Did he get any reaction from the other people at the table?

A. They just kind of went, 'Yeah,' and laughed.

Q. Would you recognize this person if you saw him again?

A. Yeah."

Following the testimony of the two sisters, the defendant's counsel moved that the sisters be allowed to look at the jury and determine if they could actually identify the person who made the comment as a member of the jury. The court announced:

"I'll tell you what I'm going to do. I'm going to defer ruling on the motion at this time. I'm going to go ahead and call the jury in and start the trial and that will give them certainly an opportunity to see who the twelve are and then at some recess or something if you want to bring them back in I'll at least consider it, consider whether they—that'll give them an opportunity to view them and still go. At the first recess if you'll remind me if you want to have further evidence."

The first recess occurred after the testimony of the victim and the sheriff. During that recess, one sister testified that the man who made the comment was on the jury. "This second seat in the front row." The description of that juror matched the description previously given of the person who made the comment. The state stipulated that the testimony of the second sister would be the same. The court then said the following.

"I think at this time—of course, the Court's going to go ahead and proceed with the trial, take the motion for mistrial and just hold it with the case, give me time to read maybe some point. I'll hit the law library here one of these recesses. I'll just take it. At this time I'll defer ruling on it."

The court did not expressly deny the motion for a mistrial. It did expressly deny the defendant's motion for a new trial, which contained an allegation of error because the court failed to sustain the defendant's motion for a mistrial.

▄▄▄ The defendant's allegation of error must be reviewed under the following fundamental principle.

"A criminal defendant is entitled to a full panel of qualified jurors before he is required to expend his peremptory challenges; denial of a legitimate request to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. Johnson,* 722 S.W.2d 62, 65 (Mo. banc 1986). To qualify as a juror, the venireman must be able to enter upon that service with an open mind, free from bias and prejudice. (Citation omitted)." *State v. Wheat,* 775 S.W.2d 155, 158 (Mo. banc 1989), cert. denied, 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990).

Also see *Presley v. State,* 750 S.W.2d 602 (Mo.App.1988), cert. denied, 488 U.S. 975, 109 S.Ct. 514, 102 L.Ed.2d 549 (1988). There can be no doubt the reported comment demonstrates "bias and prejudice", a predisposition to convict before evidence is heard. The state argues it could have been a comment made in jest, or a humorous remark. Cf. *United States v. Pantone,* 609 F.2d 675 (3d Cir.1979). One would hope that to be true. But, in the absence of explanation, the chance that it was not is not a risk the defendant should bear.

Had the predisposition embodied in the comment been expressed by a juror during the voir dire examination, in the absence of rehabilitation, it would have been error not to excuse that juror when challenged for cause. *Presley v. State, supra; State v. Leipus,* 675 S.W.2d 896 (Mo.App.1984). Even if such a remark could be regarded as "equivocal" upon such a challenge, it would have been the duty of the trial court to conduct an independent investigation to determine the existence of bias. *State v. Burgess,* 800 S.W.2d 743 (Mo. banc 1990); *State v. Trimble,* 654 S.W.2d 245 (Mo.App. 1983). Moreover,

"[a]s said in *Theobald v. St. Louis Transit Co.,* Mo., 191 Mo. 395, 90 S.W. 354 (l.c. 359) (1905): 'It is proper to examine a juror as to the nature, character, and cause of his prejudice or bias, but it is not proper to permit the juror, who admits the existence in his mind of such prejudice or bias, to determine whether or not he can or cannot, under his oath, render an impartial verdict. Such a course permits the juror to be the judge of his qualifications, instead of requiring

the court to pass upon them as questions of fact.'" *State v. Land,* 478 S.W.2d 290, 292 (Mo.1972).

Presentations of claims of juror bias disclosed after the voir dire examination may involve a variety of factors. Disclosure of the alleged bias may or may not have been called for by the voir dire examination. *State v. Brusatti,* 745 S.W.2d 210 (Mo.App.1987); *Cannon v. Lockhart,* 850 F.2d 437 (8th Cir.1988). A defendant may not complain promptly upon disclosure before the verdict. See *State v. O'Dell,* 684 S.W.2d 453 (Mo.App.1984). The disclosure may come during, *United States v. Pantone,* supra, or after trial. *Baca v. Sullivan,* 821 F.2d 1480 (10th Cir.1987). Such variable factors may have a bearing upon the procedure required to present such a claim and the standard by which the right to relief is to be measured. *Cannon v. Lockhart,* supra; *Baca v. Sullivan,* supra. Nonetheless, in general, subject to limitations, it is recognized "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78, 85 (1982).

In this case the voir dire examination called for an affirmative disclosure of a predisposition to convict. The defendant without delay during the trial presented his allegation of a disclosure of bias. It has been held that such an allegation automatically requires the court to hold a hearing to determine the existence of bias. See *United States v. McKinney,* 429 F.2d 1019 (5th Cir.1970), *modified and reversed on rehearing,* 434 F.2d 831 (5th Cir.1970), *cert. denied,* 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). For a history of the doctrine, see *United States v. Bradshaw,* 787 F.2d 1385 (10th Cir.1986).

The following is an expression of the opposite doctrine.

"A trial court has a great responsibility and wide discretion in dealing with a motion for a new trial based on allegations of juror misconduct. *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *Woodring v. United States,* 376 F.2d 619, 623 (10th Cir.), *cert. denied,* 389 U.S. 885, 88 S.Ct. 153, 19 L.Ed.2d 182 (1967). The trial judge's response to such a motion must be guided by the content of the allegations, including the seriousness and likelihood of the alleged bias, and the credibility of the source. *See Hendrix,* 549 F.2d at 1227–28. The appropriate inquiry in this case is whether either actual bias existed or ' "whether the circumstances ... compel an imputation of inherent bias to the juror as a matter of law." ' *Williams v. United States,* 418 F.2d 372, 377 (10th Cir.1969) (quoting *Brown v. United States,* 356 F.2d 230, 233 (10th Cir.1966))." *United States v. Bradshaw,* 787 F.2d at 1390. (Omission in original).

Cf. *State v. Brusatti,* supra; *State v. O'Dell,* supra; *State v. Lee,* 654 S.W.2d 876 (Mo. banc 1983). Accepting this view, an analogy may ·be drawn to the situation where a juror gives an equivocal answer to a question to determine his bias.

"In instances where a prospective juror gives equivocal answers which reveal uncertainty as to his ability to be impartial, the failure of the trial judge to further question the juror to explore possible prejudice may undercut any basis for the trial judge's exercise of discretion and constitute reversible error. (Citations omitted)." *State v. Ealy,* 624 S.W.2d 490, 493 (Mo.App.1981).

Also see *Catlett v. Illinois Cent. Gulf R. Co.,* 793 S.W.2d 351 (Mo. banc 1990).

In this case the report of the comment was on its face credible. The trial court did not find it to be otherwise and did not rest its decision not to conduct the required inquiry on that basis. The content of the comment was serious. Unexplained, it compels an imputation of bias as a matter of law. The decision of the trial court not to explore the identified juror's bias "undercut[s] any basis for the trial judge's exercise of discretion." Inasmuch as this case was heard by a jury of twelve with no alternate, it is not necessary to consider the possible remedy of excusing the juror. In the absence of conducting a hearing to

determine the existence of juror bias, the court's denial of a mistrial was reversible error. Cf. *State v. Teter*, 724 S.W.2d 538 (Mo.App.1986). That being so, the appeal from the denial of the postconviction motion is moot. The judgment is reversed and the cause is remanded.

FLANIGAN, C.J., and SHRUM, J., concur.