**STATE of Missouri, Plaintiff–Respondent,**

v.

**Timothy S. PURDUE, Defendant–Appellant.**

No. 21917.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 8, 1998.

Rosemary E. Percival, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Timothy S. Purdue (defendant) appeals convictions of assault in the first degree, § 565.050,[1] and armed criminal action, § 571.015. He contends the trial court erred in denying his request to quash the jury panel (1) because of conversations between panel members concerning the case during a recess before completion of voir dire, and (2) because of statements the prosecuting attorney made to the panel while conducting voir dire. This court affirms.

Vivian Willoughby was shot as she walked from the door of a pawn shop in Springfield, Missouri. Evidence at trial included testimony of the victim and David Tuter, a retired police officer who was at the scene of the shooting. Both witnesses identified defendant as the shooter. Defendant does not challenge the sufficiency of the evidence.

During the latter part of voir dire, after a recess for lunch, defendant's trial attorney asked the panel of prospective jurors if any of them remembered "something about the incident" that was the basis for the trial. Several of the prospective jurors raised their hands. Margaret Stengel was one of those responding. She told the court that during the noon recess she heard one of the panel members say the victim had been shot several times.

After the trial court completed the collective voir dire of the entire panel, it recessed to conduct additional individual voir dire. Ms. Stengel was one of the prospective jurors who was questioned individually. She was asked if she knew the name of the panel member she heard talking about the case during the noon recess. Ms. Stengel did not know the person's name, but she described the panel member she heard speak and told the court where the person had been sitting during the earlier voir dire inquiry. Ms. Stengel said the statement she heard was, "Well, it was a pretty violent crime because she was shot like a number of times." She said she asked the man seated next to her during voir dire if he heard the conversation during the noon recess. He told her he had.

Ms. Stengel was asked if she knew how many people were involved in the conversation. She answered that there were four in addition to herself and the woman who made the statement. She identified those who were involved in the conversation as Mr. Lugeanbeal, Ms. Steinert, Ms. Simpson and a man she described as an older gentlemen who was wearing a blue short sleeve shirt and had grey hair.

The person who Ms. Stengel described as the one she heard say the victim had been shot several times was Rosamary Moore. Ms. Moore was questioned individually by the trial court and the trial attorneys. The judge told her she would not serve as a juror because of the prior knowledge about the case that was divulged during the earlier voir dire inquiry. She was asked if she had commented about the facts of the case in the presence of other prospective jurors. She answered that she had remarked that she knew the victim had been shot several times.

Ms. Moore was asked how many people were around her when she made the remark about the case. She said there were three or four. She said a girl was there and Mr. Lugeanbeal was there and "an elder guy with white hair." She added that the "elder guy" said he thought he remembered something.

Other prospective jurors who were questioned individually included Ms. Steinert and Mr. Fritts. (Mr. Fritts was determined to be the "elder guy" Ms. Moore described.)[2] Ms. Steinert was asked if she was near where Ms. Stengel overheard the discussion about the facts of the case. Ms. Steinert answered that she did not hear any discussion.

1. References to statutes are to RSMo 1994.

2. Neither Mr. Lugeanbeal nor Ms. Simpson was questioned individually. Neither served on the jury that tried defendant's case.

The trial judge told Mr. Fritts that Ms. Moore confirmed "she had in fact said a couple of things about the case down in the jury room." Mr. Fritts was told that one of the people who had been in the group where the remark was made matched his description. He was asked if he recalled Ms. Moore saying anything about the case and, if so, what it was that she said. Mr. Fritts said he knew there was some conversation going on, but he was not involved in it or interested in it. He did not remember any statement that may have been made.

Defendant's trial attorney moved to quash the jury panel. He contended it had "been tainted or contaminated" as a result of Ms. Moore's remark. The motion to quash was made after the trial court inquired of Ms. Stengel and Ms. Steinert about Ms. Moore's remarks, but before it inquired of Ms. Moore and Mr. Fritts. After the motion was made, the trial court, defendant's trial attorney and the prosecuting attorney questioned Ms. Moore and Mr. Fritts. Following its inquiry of Ms. Moore, the trial court denied the motion to quash the jury panel.

■ Defendant's first allegation of error contends the trial court abused its discretion in denying the motion to quash the jury panel. Defendant argues that the state failed to affirmatively show that none of the jurors were subject to improper influence as a result of Ms. Moore's statement during the lunch recess.

Defendant's argument is premised on there having been six people present when Ms. Moore made her remark. He contends at least one person who was present was not identified and may have served on the jury.

Ms. Stengel was asked the following questions and gave the following answers concerning the number of people present when Ms. Moore made her remark:

MR. VAN ARKEL [defendant's trial attorney]: Can you even say how many people or who they were or that kind of thing?

VENIREMAN STENGEL: One, two, three, four, myself and the woman who disclosed the information.

MR. VAN ARKEL: Okay.

VENIREMAN STENGEL: So that many. That's a total of six.

The trial court determined that the four people present in addition to Ms. Stengel and Ms. Moore were Mr. Lugeanbeal, Ms. Steinert, Ms. Simpson and Mr. Fritts. Only Ms. Steinert and Mr. Fritts were on the jury that tried the case. The record does not support defendant's contention that one of the people who heard Ms. Moore's remark was not identified and could have been a member of the jury.

Defendant relies on *State v. Lynch,* 816 S.W.2d 692 (Mo.App.1991), in support of his first point on appeal. His reliance on *Lynch* is based on the assertion that there was an unidentified potential juror who could have been affected by Ms. Moore's comment. Although that argument is not supported by the record, *Lynch* is instructive regarding claims of juror misconduct.

*Lynch* involved a situation where voir dire was completed and a jury of 12 persons was selected before a noon recess. During the noon break, a person thought to be a juror made a statement that revealed a bias adverse to the defendant in the case. The incident was reported to the trial judge and a mistrial was requested. The judge began the trial and advised the persons who overheard the remark to observe the jury during trial to ascertain if the person they heard speak was a member of the jury. At the first recess the trial judge was advised that the person who made the prejudicial statement was a member of the jury.

In *Lynch,* the judge told the parties he would "go ahead and proceed with the trial, take the motion for mistrial and just hold it with the case"; that he would "defer ruling on it." *Id.* at 694. He did not rule on the motion. The failure to grant the motion for mistrial was included as an allegation of error in the motion for new trial. The motion for new trial was denied.

This court, observing that "[t]o qualify as a juror, the venireman must be able to enter upon that service with an open mind, free from bias and prejudice," held that the remark the juror made demonstrated a predisposition to convict before any evidence was

heard; that inasmuch as the incident occurred after voir dire and no alternate juror had been empaneled, there had been no possibility of excusing the offending juror and proceeding with a replacement. *Id.* This court reversed concluding, "In the absence of conducting a hearing to determine the existence of juror bias, the court's denial of a mistrial was reversible error." *Id.* at 695–96.

Here, unlike in *Lynch,* the possible prejudicial remark was disclosed before the jury was selected. The trial court addressed the problem by investigating the circumstances through additional individual voir dire. It determined that the incident did not involve any of the persons who ultimately served on the jury that heard and decided the case. There was no showing that the jurors had been subjected to improper influences. *See State v. Weaver,* 912 S.W.2d 499, 512 (Mo. banc 1995), *cert. denied,* — U.S. ——, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996); *State v. Chambers,* 891 S.W.2d 93, 101 (Mo. banc 1994). Point I is denied.

■ Defendant's second allegation of error contends the trial court erred in failing to quash the jury *sua sponte* following an impromptu demonstration by the prosecuting attorney during voir dire and remarks by him about eyewitness identification. Defendant contends the prosecutor's actions caused "jurors to speculate, called for a commitment, and predisposed the jurors to believe that identification of [defendant] as the shooter by two of the state's witnesses was accurate even though those witnesses gave vague or contradictory descriptions of the shooter."

The occurrence to which Point II is directed involved the prosecuting attorney turning away from the jury panel during voir dire and asking four of its members what color shirt he was wearing. Two stated he was wearing a white shirt. The other two did not know. The prosecutor then inquired if the panel members would have recognized him from prior contacts even if they did not know the color of the shirt he was wearing. His remarks included a statement to a prospective juror that what he was getting at was that she might not know everything about what he was wearing but she would still recognize him. She agreed.

Defendant's trial attorney did not object to the prosecuting attorney's conduct. By not objecting he failed to preserve the issue for appellate review. *State v. Parker,* 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Pospeshil,* 674 S.W.2d 628, 632 (Mo.App.1984). Defendant tacitly acknowledges the issue was not preserved for review in that he asserts the trial court's failure to quash the panel was "plain error". *See* Rule 30.20.

■ Arguably, the actions by the prosecuting attorney about which defendant complains in Point II were improper. Those actions might be construed as an attempt to sway the jury's evaluation of eyewitness testimony by obtaining commitments from them prior to their being afforded the opportunity to evaluate that testimony. *See State v. Newman,* 651 S.W.2d 185, 186 (Mo.App. 1983). However, what defendant's Point II requests is for this court to convict the trial court of error for failing to act *sua sponte.* This court declines.

■ A trial court should act *sua sponte* only in exceptional circumstances. *State v. Drewel,* 835 S.W.2d 494, 498 (Mo.App.1992). Having reviewed the record on appeal, this court does not fathom the circumstances about which defendant complains to have been exceptional. There was no manifest injustice or miscarriage of justice. There was no plain error. Point II is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur