STATE of Missouri, Plaintiff–Respondent,

v.

Donald Lee HAYES, Defendant–Appellant.

No. 26604.

Missouri Court of Appeals, Southern District, Division One.

Aug. 31, 2005.

---

Nancy A. McKerrow, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JOHN E. PARRISH, Judge.

Donald Lee Hayes (defendant) was convicted, following a jury trial, of statutory rape in the first degree (Count I), § 566.032, and statutory sodomy (Count II), § 566.062.[1] This court affirms.

■ Defendant's arguments on appeal include that the evidence was not sufficient to prove the offenses of which he was found guilty.

On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all

---

1. The offenses charged are alleged to have occurred "between January 1, 1998, and December 31, 2000." The language in §§ 566.032 and 566.062, RSMo Cum.Supp. 1997, is the same as the language in the RSMo 2000 revision of those statutes. References to statutes in this opinion will be to RSMo 2000 unless otherwise stated.

evidence and inferences to the contrary. *State v. Strickland,* 609 S.W.2d 392, 395 (Mo.banc 1980). In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Kelly,* 539 S.W.2d 106, 109 (Mo.banc 1976); *State v. Chunn,* 701 S.W.2d 578, 580 (Mo.App.1985).

*State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). *See also State v. Xia,* 60 S.W.3d 28, 30 (Mo.App.2001).

At the time of trial S.H. was 14 years old. She was in the eighth grade. She lived with a foster family. Before being placed with a foster family, she had lived with her father after her mother left the home. Defendant is S.H.'s uncle. When S.H. was in the second and third grades, defendant lived with S.H.'s grandmother at Steelville.

S.H. described to the court and jury acts committed by defendant when she was at her grandmother's residence. S.H. used the words "china" and "hot dog," respectively, to describe a female vagina and a male penis. In a videotaped statement, S.H. told of being with defendant in defendant's bedroom at her grandmother's residence. She said defendant had her unbutton her pants, take them off, and lie on the bed; that he had sexual intercourse with her. S.H. said it hurt.

On another visit, defendant and S.H. were in the kitchen. Defendant told S.H. to touch his "hot dog" with her mouth. Defendant told her to suck his penis. She did what defendant told her to do. S.H. told of other incidents when he would touch her vagina and have her touch his penis.

S.H. told her foster mother that she had been molested. Her foster mother report-ed what she had been told to a social worker who referred S.H. to the Child Advocacy Center. S.H. was interviewed by a Child Advocacy Center worker. The videotaped statement was the interview at the Child Advocacy Center. It was admitted in evidence and shown to the jury.

Defendant raises six points on appeal. Point I is directed to the venire from which the jury was selected. Points II, III and IV are directed to evidence issues. Point V is directed to the closing argument by the state. Point VI challenges the sufficiency of the state's evidence.

*Point I–Venire*

Trial of this case took place July 23, 2004. On July 21, voir dire was conducted in another Dent County case. After a jury was selected for the case that was to be tried that date, the panel members who were not selected for that case and who had not been stricken for cause or hardship were directed to return the next day. On July 22, voir dire was conducted for a case set for trial that day. The defendant in it was Robert Hayes, brother of this defendant. The prosecuting attorney stated that the case involved a girl about 13 years old named S.H.; that when she was about 11 years old, she had contact with her uncle, Robert Hayes, the defendant in the case that was for trial that day. The panel was told, "The evidence is going to be that the time when she was alone with him, on more than one occasion, he had sexual intercourse with her and he had deviate sexual intercourse with her." The panel was asked if any panel member knew those persons or had heard anything about that case. One member of the panel responded that she knew S.H. At the close of voir dire, strikes were made for cause. During the time for making peremptory strikes, the defendant in that case, Robert Hayes, pleaded guilty to the charges for

which he was scheduled to stand trial. The guilty plea hearing was conducted outside the presence of the prospective jurors.

After the panel members returned to the courtroom, the trial court advised them that there had been "a resolution in [the] case." The panel members were told there would be another case the following day; that those who were not excused would be needed the following morning. The names of those panel members who were excused and who would not be required to return were read. The others were told to return the following day.

Following the discharge of the venire panel, the case that is the subject of this appeal was called for the purpose of addressing "particular objections" defense counsel wished to raise. The attorney who was representing this defendant also represented the defendant in the case that had been resolved. He told the trial court:

> The defense objects to the use of this panel as it presently is constituted because we believe that the case against [defendant] is contaminated by the voir dire of the case involving his brother, Robert Hayes. The alleged victims in each case were similar. The alleged transgressions in each case were similar. [The prosecuting attorney], in briefing the voir dire with regard to subject matter of this case, obviously indicated who the alleged victim was, and that was certainly proper. But the problem from the defense standpoint is, now that the information with regard to our previous trial has taken place and suddenly the defendant has disappeared, has the potential to contaminate the jury with regard to the brother. It is true that the Court did not declare to the jury what the resolution was, but I think the implication is certainly there and strong that it was resolved by some kind of resolution with regard to being unfavorable to

the defendant. In any case, we believe that this panel is prejudiced. We've offered the Court to select another panel from either another jurisdiction to bring them in, or pass til [sic]—request a continuance until after this panel—or at least, actually defense originally hoped to pass it til [sic] the new panel convenes the first of October. If that's not possible, we believe that it would certainly be appropriate to continue it, say, thirty days to allow these people to, frankly, forget what the subject matter of this particular case was and who the name of the particular defendant was. We believe that trying this case with almost the same names and two separate people so close, that that certainly contaminates the defense's ability to have a fair trial without some implication from the previous case.

Following remarks by the prosecuting attorney, the trial judge stated, for purposes of subsequent appellate review, the process that had been followed.

> We commenced having a trial on July 21st with another unrelated manner [sic], and a jury was picked and a jury trial was conducted on that particular matter, and the balance of the pool from that that was not chosen, and we did strike off all those that were struck for cause in that particular case and by agreement none of them were allowed to return, in addition, some who had some hardship, they were not allowed to return at all. The balance of that panel from the first trial was then summonsed back for today's date for a trial in *State v. Robert Hayes*, and that cause, after we got through the process of making your preemptory [sic] strikes was resolved. The next trial, and the process that the Court anticipated that the record will show, all those that were struck for cause in the voir dire in *State v.*

*Robert Hayes* and those excused because of hardship were not allowed to [sic] back tomorrow's date on the 23rd. What will remain will be the balance of the pool and that is the process this Court has taken up because it has such a large volume of jury trials that are taking place of late, and as a consequence, we try several in a row. It is the Court's view that the objection that [defense counsel] makes might have some validity. However, the only way that that can be proven up is in a voir dire examination tomorrow. If the Court feels that as a consequence of some examination that either counsel does that [sic] the pool is tainted in some way, the Court would then again entertain the request to strike the entire venire panel.

The next morning, prior to commencement of trial in this case, defendant's attorney made the following request.

Your Honor, first I would like to renew our objection to the use of this venire panel on the basis of the fact that the discussions yesterday with respect to the case, the victim in the case, as well as the names of the—name and recognition of the defendant at that time, we believe prejudices the likelihood of a fair trial with regard to this defendant since now all of a sudden that case was resolved.

The trial court denied defendant's request noting, "[T]he only way we're going to know if yesterday's proceedings had any impact on the remaining panel will be to cover that issue in voir dire. So your request is denied." Trial commenced with voir dire.

▆▆▆ Point I argues that the trial court erred; that it abused its discretion in denying defendant's request to quash the venire panel. Defendant contends he was denied trial by a fair and impartial jury because the "same venire panel had gone

through voir dire the day before in *State v. Robert Hayes* and were informed that [defendant's] brother [,] Robert, was on trial for statutory rape and statutory sodomy of his niece, [S.H.], the same charges against the same victim [defendant] was facing, and the venire panel knew that Robert's case had been 'resolved' after voir dire."

The trial court is afforded wide discretion in ruling on a motion to quash the entire jury panel. *State v. Everage,* 124 S.W.3d 11, 13 (Mo.App.2004). However, that discretion is not unfettered. In making its determination, the court must consider the defendant's right to a trial before a fair and impartial jury. *See id.* (stating that, when ruling on a motion to quash the entire venire, a court must consider whether the entire jury panel has been tainted so as to deprive the defendant of a fair trial). Thus, if the jury panel has been prejudiced against a criminal defendant such that a fair and impartial jury cannot be impaneled, the court must quash the entire panel and begin anew. The defendant bears the burden of demonstrating that the trial court erred in denying his motion to quash the jury panel. *State v. Sprinkle,* 122 S.W.3d 652, 669 (Mo.App.2003).

*State v. Muldrow,* 145 S.W.3d 471, 473 (Mo.App.2004). The trial court suggested to defense counsel that whether the jury panel had been tainted so as to require its discharge could be addressed on voir dire; that the trial court had nothing before it that required the granting of defendant's requests to discharge the panel at the times those requests were made.

▆▆▆ As the trial court observed, "A defendant has a right, through the process of voir dire, to discover bias or prejudice on the part of prospective jurors." *State v. Nicklasson,* 967 S.W.2d 596, 608 (Mo. banc), *cert. denied,* 525 U.S. 1021, 119

S.Ct. 549, 142 L.Ed.2d 457 (1998). "Where [a defendant] claims the trial court abused its discretion, [the defendant] has the burden of showing 'a real probability that he was thereby prejudiced.'" *Id.,* quoting *State v. Gray,* 887 S.W.2d [369] at 382 [ (Mo.banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995) ].

Near the beginning of voir dire, the trial court stated to the venire panel:

> I believe all but maybe one of you were present here yesterday, and the Court proceeded with a case, and we reached a resolution in that matter.

> Now, I don't want there to be any misunderstanding in this regard, and I know counsel will cover some of this issue, particularly [defendant's trial attorney]. The defendant in this case, Mr. Donald Hayes, is related to the defendant in the case yesterday. Is [sic] there any of you on the panel who, if knowing that they are related, and that these are not the same cases as we dealt with yesterday, is [sic] there any of you who are going to hold that matter, whatever transpired therein, against this defendant, Donald Hayes? If so, raise your hand.

> I see none.

> Is [sic] there any of you who does not understand that those are totally unrelated matters, and that this is a separate case, and that you are not bound to listen to the facts in this case and decide this case based solely on the facts that are presented to you in this case? If so, raise your hand.

> I see no hands.

The attorneys then commenced their inquiry. The prosecuting attorney inquired if any member of the panel had heard anything about the case and if any were acquainted with defendant or with S.H. There were no responses.

Defendant's trial attorney asked no questions directed to the panel's participation in voir dire in the previous two cases, including the one in which Robert Hayes was defendant and S.H. was the victim. His inquiry demonstrated no error by the trial court in denying defendant's request to quash the panel. No factual basis for the claimed error appears in the voir dire. To the contrary, the trial court's inquiry regarding any effect of the prior day's proceedings revealed nothing that would support defendant's claim that he could not receive a fair trial before a jury selected from the panel that was assembled.

Defendant acknowledges that no case was found with facts akin to those in this case regarding jury selection. Two cases cited by defendant that were reversed because of circumstances involving juries warrant comment, *State v. Baumruk,* 85 S.W.3d 644 (Mo. banc 2002), and *State v. Lynch,* 816 S.W.2d 692 (Mo.App.1991).

*Baumruk* involved a murder charge directed to a shooting that occurred at the St. Louis County Courthouse, the same location where the murder case was tried. The shooting that resulted in the death of the person who was the subject of the murder trial occurred during a dissolution of marriage case in which at least three persons, in addition to the victim for whom defendant was on trial for murder, were shot by that defendant. The courthouse shooting took place on the same premises where the murder trial was held. The court, in holding it had been error to deny a request for change of venue, observed, "The verdict must be based on the evidence that is developed at trial regardless of the heinousness of the crime or the apparent guilt of the offender. [*Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) ]. The association be-

tween the jurors and crime scene in this case created a prejudicial environment, which undermines the basic guarantee of trial by jury." 85 S.W.3d at 650.

The facts in this case regarding the jury that decided the case are not similar to those in *Baumruk*. It was the location of the crime that precluded the jury in *Baumruk* from being "a panel of impartial 'indifferent' jurors." *Id.* In *Baumruk*, the concern was that the jurors would perceive themselves placed "in the shoes of the victims"; that they "arrived at the courthouse and entered through metal detectors that had been installed as a direct result of Baumruk's shooting spree. Jurors walked the same halls, used the same elevators, stairwells, and escalators that were used by escaping victims. The trial was held in a courtroom nearly identical to the courtroom that was the scene of the crime. The jurors, in effect, sat at the murder scene while determining guilt or innocence and the penalty to be imposed." *Id.* (Footnotes omitted.) The environment of the trial in this case does not pose a question regarding "the impartiality of the adjudicator" as proclaimed in *Baumruk*. *See Id. Baumruk* is of no consequence to this appeal.

*Lynch* is of no assistance to defendant. To the contrary, the fault found in the trial court's conduct in *Lynch* was addressed by the trial court in this case. In *Lynch*, a member of the jury panel was reported to have made a statement about the case to other jurors at a café during lunch break. The comment was that "these proceedings are taking too long, we could have already convicted the guy and gone home by now." 816 S.W.2d at 693. Defense counsel in the case moved for mistrial. It was not granted nor was inquiry of the jury panel conducted regarding the alleged statement. Trial proceeded. On appeal, the conviction was reversed, the court stating that the trial court erred in not conducting an independent investigation to determine if bias existed among the jury. The court noted, "[I]n general, subject to limitations, it is recognized 'the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.'" 816 S.W.2d at 695, quoting *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

■ Voir dire was conducted in this case the morning of trial. It afforded defendant the opportunity to inquire for the purpose of proving bias. No bias was shown. Additionally, Instruction No. 1, patterned after MAI–CR3rd 302.01, admonished the jury that it was their duty to determine the facts "only from the evidence and the reasonable inferences to be drawn from the evidence." "When a jury receives proper and adequate instructions, it is presumed the jury will properly follow the instructions as given." *State v. Payton*, 895 S.W.2d 283, 285 (Mo.App.1995). Point I is denied.

*Point VI—Sufficiency of the Evidence*

■ Point VI alleges that the trial court erred in denying defendant's Motions for Judgment of Acquittal on Counts I and II and in sentencing him for the offenses alleged in those counts because the evidence was insufficient to prove either charge occurred. Defendant argues that the evidence was not sufficient because "the only evidence supporting [defendant's] convictions was [S.H.'s] unsworn, out-of-court statement, which was not corroborated by any other evidence."

S.H. testified at trial. The videotaped statement made at a Child Advocacy Center was also viewed by the jury. In her videotaped statement, S.H. said when she was in the second or third grade defendant put his penis (his "hot dog") into her vagina (her "china"). She said this took place

in defendant's bedroom at S.H.'s grand-mother's house. S.H. told the interviewer that defendant told her to unbutton her pants, take them off, and lay on the bed. She said it hurt.

At trial, S.H. told about a time when she was in defendant's bedroom with him at her grandmother's house. She said defendant did something she did not like; that he touched her. She said he touched her "china" with his hand. She was then asked the following questions and gave the following answers:

Q. Did he tell you to do anything with your clothes?

A. No.

. . .

Q. [S.H.], do you remember being interviewed by a Child Advocacy Center worker? Do you remember Dina?

A. Yes.

Q. Do you remember telling her that he told you to unzip and take off your pants?

A. I don't remember.

S.H. was asked if she remembered being in the kitchen of her grandmother's home. She answered, "Yes." She was asked if she was there with defendant. S.H. said she was. She said defendant touched her vagina; that he had her touch his penis. She described what he had her do with her hand on his penis; that he had her "[g]o up and down." She said a white substance came out of his penis; that it was on her hand.

S.H. was asked if defendant had her touch him with anything besides her hand. She answered, "No." S.H. was then asked the following questions and gave the following answers:

Q. [S.H.], do you remember being at the Child Advocacy Center and telling them what he had you touch him with?

A. My mouth.

Q. Did he tell you to do something with your mouth?

A. Put it on him.

Q. What did he tell you to do after you put your mouth on his hot dog?

A. Go up and down with it.

Defendant argues that S.H.'s testimony at trial recanted the videotaped statement made at the Child Advocacy Center. He says she denied the events she described on the videotape; that, therefore, there was not sufficient evidence for him to be convicted because "the only evidence . . . was [S.H.'s] unsworn, out-of-court statement, which was not corroborated by any other evidence."

Defendant relies on *State v. Pierce*, 906 S.W.2d 729 (Mo.App.1995), as authority for his claim of error in Point VI. The criminal charge in *Pierce* was statutory rape. Pierce was accused of having sexual intercourse with a female to whom he was not married and who was then 14 years old. A hotline call was made to the Division of Family Services (DFS) regarding Pierce's girlfriend's concern about what to do to prevent Pierce from getting their son, Sam, in the event she left Pierce. The call included information concerning a relationship between Pierce and the 14–year-old.

A DFS investigator contacted the 14–year-old. The investigator stated that the girl told her about sexual intercourse between her and Pierce. A videotaped interview was attempted but the audio did not work; thus, there was no sound recording of the statement by the girl. A hospital S.A.F.E. examination of the girl was conducted within 72 hours from the time the investigator said the girl stated she had last had sexual intercourse with Pierce—a time period when evidence of sperm could be discovered. The results of the examination were not admitted in evidence.

The 14–year–old testified that the investigator's visit to her was because of an allegation by Pierce's girlfriend that the girl and Pierce had "slept together." She stated that the investigator and a deputy sheriff who accompanied the investigator told her that if she told them what they wanted to hear, they would let her go and would do nothing to her. She said she then admitted having sexual intercourse "because 'it was what they wanted to hear' and because she wanted to go home and be left alone." *Pierce,* 906 S.W.2d at 732. She claimed that her statements to the investigator about having had sexual intercourse with Pierce were lies.

*Pierce* addressed the issue, "Where the only substantive evidence against the defendant in a statutory rape case is an out-of-court statement made by the prosecutrix to authorities, but prior to and at trial, the prosecutrix repeatedly recants her statement that sex occurred, may the conviction be upheld without corroborating evidence?" 906 S.W.2d at 733. *Pierce* notes that § 491.074, RSMo 1994, provided that prior inconsistent statements of any witness testifying at trial of an offense under certain chapters, including chapter 566, "shall be received as **substantive evidence** and the party offering the prior inconsistent statement may argue the truth of such statement." [2] *Id.* at 733 (emphasis in original). *Pierce* declared that § 491.074 settled the question of the purpose for which an inconsistent statement was admissible, the question of the necessity of corroboration in rape cases in which an out-of-court statement is recanted by a prosecutrix's testimony. *Pierce* held that, under the unique factual situation in that case, corroboration of the prosecutrix's out-of-court statement was necessary; that there was not corroborating evidence; and, therefore, the conviction in *Pierce* would be reversed. *Id.* at 735.

Defendant argues that his situation is like that in *Pierce;* that based on the testimony of S.H. at trial, the trial court erred in not granting his motions for acquittal as to both Counts I and II. In *Pierce,* the prosecutrix continually denied that rape occurred. She stated that she had not told the truth when she told the DFS investigator that she had sexual intercourse with Pierce. *Pierce* involved circumstances where the prosecutrix had "prior to and at trial ... repeatedly recant[ed] her statement that sex occurred." [3] *Id.* at 733.

S.H. did not recant, either at trial or before trial, her statements that described sexual intercourse or sodomy, i.e., she did not withdraw a prior statement nor make a confession of error with respect to an earlier statement. Rather, there were inconsistencies in statements she made at trial compared to the videotaped statement she had given at the Child Advocacy Center. S.H. was not asked if her earlier statement was untrue nor did she state it was untrue. She was asked about being in defendant's bedroom with him. She said defendant touched her vagina with his hand. She stated he did not tell her to do anything with her clothes. However, when asked if she remembered being interviewed by the Child Advocacy Center worker and if she remembered telling her defendant told her to unzip and take off her pants, she stated she remembered being interviewed by the

---

**2.** The words "trial of a criminal offense" appear in RSMo 2000 in lieu of the specific chapters referred to in the 1994 revision. The change is of no consequence in this case.

**3.** The definition of "recant" is: "**1:** to withdraw or repudiate (a statement or belief) formally and publically: RENOUNCE **2:** REVOKE: to make an open confession of error." Merriam–Webster's Collegiate Dictionary, Eleventh Ed. (2003).

Child Advocacy Center worker but said she did not remember if she told the worker that defendant told her to unzip and take off her pants. She stated in her videotaped statement that defendant had her unbutton her pants and take them off and lie on the bed; that he had sexual intercourse with her; that it hurt.

During S.H.'s direct testimony at trial she was asked if defendant had her touch him with anything besides his hand in the kitchen of her grandmother's house. She said, "No." She was then asked if she remembered being at the Child Advocacy Center and telling them what he had her touch him with. She answered, "My mouth." She was then asked the following questions and gave the following answers:

Q. Did he tell you to do something with your mouth?

A. Put it on him.

Q. What did he tell you to do after you put your mouth on his hot dog?

A. Go up and down with it.

The jury heard S.H.'s testimony. Unlike in *Pierce*, they also saw and heard the videotaped recording of the statement she gave at the Child Advocacy Center. Likewise, unlike in *Pierce*, S.H. at no time stated that statements she made in the videotaped interview were false or that they were made in error. S.H. did not withdraw or repudiate her prior statements although there were inconsistencies between those statements and her trial testimony.

*Pierce* identified dangers in accepting out-of-court statements as substantive evidence. In the facts in *Pierce*, there was an absence of adequate safeguards to assure reliability. For those reasons, *Pierce* held the judgment of conviction in that case fell short of affording due process. *Id.* at 735. The issues identified in *Pierce* as circumstances that cast doubt on the reliability of the out-of-court statements given by the prosecutrix in that case were:

[I.] One reason for this is the lack of trustworthiness in the atmosphere where the prior out-of-court statement was procured. A less than impartial questioner could, hypothetically, maneuver the witness into giving an inaccurate statement. See 4 J. Weinstein and M. Burger, Weinstein on Evidence, § 801(d)(1)(A)[01], at 801–807 (1985).

[II.] Additionally, the jury may draw unreliable inferences from its mistrust of the declarant's present demeanor. The demeanor may have been equally poor at the time she made the prior statement, but that demeanor is hidden from the critical eyes of the present trier of facts. S. Goldman, *Guilt By Intuition: The Insufficiency of Prior Inconsistent Statements To Convict*, 65 N.C.L.Rev. 1, 11 (1986–87). A witness' unsatisfactory trial demeanor should not provide a sufficient basis to permit conviction solely on that witness' prior unobserved statement. See *People v. Casillas*, 60 Cal. App.2d 785, 141 P.2d 768, 772 (Cal.App. 1943).

[III.] Another danger is that people tend to believe the prior statements rather than the in-court repudiation. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

*Id.* 735–36. *Pierce* further suggested that when a prior inconsistent statement is accepted by a fact-finder, "the truth of which the declarant denies at trial," the decision of a finder of fact "often is based on guess or intuition, not credible facts." *Id.* at 736.

Here, unlike in *Pierce*, the questions and answers that produced S.H.'s out-of-court statement were seen and evaluated by the jury. The questioner was a Child Advocacy Center worker. The jury had the same opportunity to assess whether S.H.'s statements were maneuvered so as to result in

"an inaccurate statement" as it did to assess whether answers given to attorneys' questions at trial were maneuvered so as to result in inaccuracies. The jury had the opportunity to assess the partiality or impartiality of the questioner. Unlike in *Pierce*, danger [I] is not a factor.

The issue of demeanor, danger [II] in *Pierce*, is not the factor in this case that it was in *Pierce*. The jury in this case saw and heard S.H.'s testimony at trial. It also saw and heard the videotaped statement made at the Child Advocacy Center. The jury had the opportunity to compare the witness' trial demeanor with her demeanor when she gave the out-of-court videotaped statement.

Danger [III] in *Pierce* was the assessment that people would tend to believe prior statements rather than in-court repudiations. In *Pierce* there were straightforward recantations of the inconsistent statement on which the conviction was based, recantations made before trial and at trial. The prosecutrix in *Pierce* stated that her earlier statement was false. Here, S.H. never stated any prior statement she made was false, nor was she asked if particular statements were false. In *Pierce* there were recantations. Here there were not.

Finally, *Pierce* suggested a danger was posed when a fact-finder accepted an out-of-court statement "the truth of which the declarant denies at trial." That situation existed in *Pierce*. It did not exist in this case. As heretofore noted, S.H. neither was asked if any of the prior statements on the videotape the jury saw were false, nor did she state they were false.

This case is, on its facts, distinguishable from *Pierce*. The videotaped statement the jury saw and heard was received as substantive evidence. § 491.074. The jury was afforded the opportunity to assess both the statements made during the videotaped interview and the statements

S.H. made in her trial testimony and to evaluate the questioning process by which answers to questions were elicited. On the basis of the record before this court, under the facts of this case, this court finds no due process violation of defendant's right to a fair trial. Point VI is denied.

### Points II, III and IV—Evidence Issues

■ Defendant contends there was error in the trial court allowing the state to make references so a "second victim," S.H.'s sister R.H., during the course of the trial (Point II); in allowing the prosecuting attorney to elicit testimony from a witness regarding R.H. because R.H. was available to testify, thereby denying defendant the opportunity to confront R.H. (Point III); and, in permitting the prosecuting attorney to elicit testimony of a witness regarding the credibility of the victim (Point IV). Defendant tacitly admits he failed to preserve the issues he now claims were errors for appellate review in that, in each instance, he alleges the trial court "plainly abused its discretion."

■ "In order to preserve an evidentiary issue in a jury trial for appellate review, an objection must be made when the evidence is sought to be introduced; that objection must be asserted as error in a motion for new trial; and the issue must be presented in the appeal brief." *State v. Guidorzi*, 895 S.W.2d 225, 228 (Mo.App. 1995). That did not occur in this case. Thus, defendant seeks plain error review as permitted by Rule 30.20.

■ Defendant is not, however, as a matter of right ·entitled to plain error review. "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." *State v. White*, 92 S.W.3d 183,

189 (Mo.App.2002). The decision of whether to grant plain error review is left to the appellate court. *State v. Campbell,* 122 S.W.3d 736, 740 (Mo.App.2004). In considering claims of plain error, this court first looks to see if the asserted claim of plain error facially establishes substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. *Id.* If this court found substantial grounds to believe manifest injustice or a miscarriage of justice occurred, it would determine whether it actually did occur. *Id.*

The record on appeal in this case includes a 156–page transcript and a 77–page supplemental transcript of voir dire proceedings in previous cases. (The supplemental transcript was provided to permit this court to address Point I.) It includes a legal file and State's Exhibit No. 1, the videotape addressed in Point VI. A review of that record does not cause this court to believe the complaints defendant now makes in Points II, III, and IV resulted in manifest injustice or miscarriage of justice. Defendant's requests for plain error review in Points II, III, and IV are denied.

### *Point V—Closing Statement*

██ Point V argues that the trial court committed plain error in failing to *sua sponte* declare a mistrial during the course of the state's closing argument. The prosecuting attorney referred to the safety of other children and to "damage to the victim, and the potential damage to other victims in determining what punishment ... should be." Defendant asks this court to grant review for plain error and to reverse defendant's convictions because the argument led "the jury to convict [defendant] and assess punishment for irrelevant reasons."

Defendant did not object at trial to the parts of the state's argument about which he now complains. The state argues that under these circumstances, plain error review is inappropriate; that "[t]rial judges are not expected to assist counsel in trying cases, and trial judges should act *sua sponte* only in exceptional circumstances."

This court stated in *State v. Vaughn,* 32 S.W.3d 798, 800 (Mo.App.2000), with respect to a claim of plain error directed to closing argument of the state, "Fatal to Appellant's argument is the absence in the record of a contemporaneous objection by defense counsel at the time of the prosecutor's purported improper closing arguments. '[P]lain error will seldom be found in unobjected closing argument,'" quoting *State v. Kempker,* 824 S.W.2d 909, 911 (Mo. banc 1992). *Vaughn* stated, " 'Because trial strategy looms as an important consideration in any trial, assertions of plain error concerning matters contained in closing argument are generally denied without explanation.'" *Id.,* quoting *State v. Weicht,* 23 S.W.3d 922, 930 (Mo.App. 2000).

This court explained, in *State v. Wright,* 934 S.W.2d 575 (Mo.App.1996):

> In *State v. Silvey,* 894 S.W.2d 662 (Mo.banc 1995), the Supreme Court of Missouri discussed requests for plain error review directed to events occurring during closing argument. In declining to grant plain error review, the court said:
>
> > Plain error review "should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *State v. McMillin,* 783 S.W.2d 82, 98 (Mo.banc 1990) (quoting, *State v. Valentine,* 646 S.W.2d 729, 731 (Mo.1983)). Relief should rarely be granted on assertions of plain error as to closing argument because, "in the absence of objection and request for relief, the trial court's op-

tions are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc 1988).

*Id.* at 584–85.

In *Wright*, consistent with the action taken in *Silvey*, this court declined to grant plain error review regarding statements in closing argument to which no objections were made. *See also State v. Markham*, 63 S.W.3d 701, 709 (Mo.App. 2002); *State v. Motley*, 56 S.W.3d 482, 485 (Mo.App.2001); *State v. Nunley*, 992 S.W.2d 892, 895 (Mo.App.1999).

Consistent with *Silvey* and its progeny, this court declines defendant's request for plain error review of statements made in closing argument to which no objections were made. Point V is denied. The judgment is affirmed.

PREWITT, P.J., and RAHMEYER, J., concur.