

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | |
|---|---|
| FRED HUDSON, | ) No. ED102907 |
| | ) |
| Movant/Appellant, | ) Appeal from the Circuit Court of |
| | ) St. Louis County |
| vs. | ) |
| | ) Honorable Steven H. Goldman |
| STATE OF MISSOURI, | ) |
| | ) Filed: March 15, 2016 |
| Respondent. | ) |

## Introduction

Fred Hudson (Movant) appeals the denial of his Rule 29.15[1] motion for post-conviction relief without an evidentiary hearing. In two points on appeal, Movant contends that the motion court clearly erred by denying his motion because (1) trial counsel was ineffective, and (2) appellate counsel was ineffective. Specifically, in Point I, Movant contends that trial counsel was ineffective for failing to elicit evidence (a) of a similar shooting at a neighboring house and (b) that another person was implicated in the shooting. In Point II, Movant contends that appellate counsel was ineffective for failing to raise, on appeal, preserved error in the trial court's refusal to quash the venire panel after a juror had an "emotional outburst" during the beginning of voir dire. We affirm.

---

[1] Unless otherwise noted, all references to Rules are to Missouri Supreme Court Rules (2014).

**Facts**

Movant was convicted of first-degree murder, first-degree assault, and two counts of armed criminal action. The court sentenced Movant to life in prison without parole for first-degree murder, life in prison for assault, and 30 years in prison for each of the two counts of armed criminal action. The two life sentences run consecutively to the two concurrent 30-year sentences, for an aggregate of two life sentences plus 30 years.

During Movant's trial, at the beginning of voir dire, a juror informed the court that she was unable to follow the court's instructions because she was related to the victims. The transcript from voir dire, in relevant part, reads:

> [The Court]: Is there any of you who if selected as a juror could not for any reason follow that instruction? If so, please raise you[r] hand. I don't see any hands, so I assume -- what's your name, ma'am?
>
>                           * * *
>
> [The Court]: Let me find you on here. Okay, you're number 45. Did you have a problem with the instruction?
>
> [Juror 45]: Yeah.
>
> [The Court]: Why don't you come on up here and we can talk to you, [Juror 45]. Did the attorneys want to come up?
>
> (The following proceedings took place at sidebar with Panelist No. 45, […]:)
>
> [The Court]: Take your time. You're not in any trouble or anything. Let me -- this is a mic that goes to the court reporter so we have to all speak in this so she can -- it saves space up here; okay?
>
> [Juror 45]: [J.H.] and [S.H.] are my cousins.
>
> [The Court]: Okay.
>
> [Juror 45]: Can I please leave?
>
> [The Court]: Yeah. We'll go ahead -- there's no objection to excusing her is there?

[Trial Counsel]: No, Your Honor.

[The Court]: You've got to go back up to the sixth floor.

[Juror 45]: I'm sorry.

[The Court]: Harvey, do you want to help this lady out?

[The State]: Let the record reflect that was the victims' relative.

[Trial Counsel]: Your Honor, at this time I would move to quash the entire jury panel because of the victim being so visibly upset in front of the panel. I think she tainted the panel. I don't think they can remain fair and impartial. She is a cousin of J.H., one of the alleged victims in this offense. Her emotional outburst was overheard by the jury. You can still hear her crying in the hallway. I could only imagine if she had said anything within earshot of the other jurors where she was seated. Therefore, at this time I move to quash the entire jury panel because I feel that they have been tainted by this particular Juror No. 45. I don't have her name in front of me.

* * *

[The Court]: What's the State's position?

[The State]: I don't think she ever stated in front of the jury how she was related to the case. I thought she may have been a victim or a family member been killed. The only time she ever said it was up here at the bench out of earshot. So all we have really is a woman crying. They have no idea what it's for. I don't think -- I think you're going to hear some emotional testimony today, and you might have someone on the stand cry. I don't know how that is prejudicial.

[The Court]: Yeah. I think the only -- that I noticed, the only time she ever said anything about why she was crying was when she got up here, so those were her first words, and the jury couldn't have heard that. She said it very softly up here. So I don't see how it really would have prejudiced the jury, so I'll deny the request for a mistrial.

The evidence at trial showed that just after midnight on January 22, 2012, Movant fired eight shots through the bedroom window of his girlfriend's parent's house. The shots killed his

3

girlfriend's mother, J.H., and injured her father, S.H. S.H. testified that his daughter came into their room after hearing the shots. S.H. turned to look at his wife, who said, "Honey, I've been shot." J.H. was pronounced dead at the scene. S.H. was shot multiple times and sustained significant injuries.

S.H. also testified that his daughter and Movant started dating around 2004. S.H. recalled that Movant was abusive towards his daughter and that he warned her about being in a relationship with Movant. S.H. testified that around 2008, Movant snuck into S.H.'s house. J.H. was the complaining witness against Movant in a criminal case involving first-degree burglary regarding that incident. Movant pleaded guilty in that case and was sentenced to five years in prison, although Movant was paroled before his sentence had run its full course.

S.H. testified that Movant sometimes parked his car in the carport of a neighboring vacant house and that just after the shooting he observed someone running in the direction of that vacant house. The detectives that arrived at the scene observed fresh tire tracks and oil on the carport driveway. Subsequently, Movant was arrested in a vehicle that appeared to be leaking oil. The detectives also obtained Movant's cell phone records and learned that, at the time of the shooting, Movant's phone was using signals from a cell tower near the victims' house. This cell tower information is consistent with Movant being at or near the scene of the murder.

Movant's cousin testified that Movant left her sister's house on the night of the murder, and when he returned early the next morning, Movant asked her for permission to put something in the trunk of her vehicle. Movant's cousin agreed and later discovered a gun and bullets in her trunk. On January 28, 2012, Movant's cousin informed the police about the gun and bullets she found in her car. Testing later revealed that all of the eight casings found at the murder scene had been fired from the gun Movant's cousin found in the trunk of her vehicle.

4

Movant's friend also testified that, about a week before the murder, he saw Movant in possession of a gun that was the same make and model as the gun recovered in Movant's cousin's trunk. Furthermore, the motion court noted the record indicated that Movant alluded to his involvement in the shooting in a recorded telephone conversation with his mother while Movant was in jail following his arrest for the murder of J.H.

Movant was convicted and sentenced on all counts. Movant appealed his convictions and sentences. This Court issued its per curiam order and memorandum in *State v. Hudson*, 433 S.W.3d 492 (Mo. App. E.D. 2014), affirming Movant's convictions and sentences, and issued its mandate on July 3, 2014. Movant then filed a timely pro se Rule 29.15 motion on July 16, 2014. Post-conviction counsel was appointed on August 12, 2014 and entered an appearance on September 23, 2014. Post-conviction counsel was granted an additional 30 days to file an amended motion. Post-conviction counsel filed an untimely amended motion on November 26, 2014, sixteen days late. On the same day, post-conviction counsel also filed a motion to consider the late motion as timely, which the court sustained. On January 23, 2015, the motion court entered an order finding that the record refuted the amended motion. On March 16, 2015, the motion court issued Findings of Fact, Conclusions of Law, and an Order of Judgment denying relief without an evidentiary hearing. Movant appeals.

### Standard of Review

Review of the denial of a motion for post-conviction relief is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Nichols v. State*, 409 S.W.3d 566, 568 (Mo. App. E.D. 2013). Findings and conclusions are clearly erroneous if, after reviewing the entire record, this Court is left with the "definite and

firm impression that a mistake has been made." *McIntosh v. State*, 413 S.W.3d 320, 323 (Mo. banc 2013). A motion court's findings are presumed correct. *Id.*

When a movant claims ineffective assistance of trial counsel, the movant must allege unrefuted facts establishing that (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) he was thereby prejudiced. *Matthews v. State*, 175 S.W.3d 110, 113 (Mo. banc 2005). An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). In order to show that counsel's performance was deficient, the movant must overcome a strong presumption that counsel's performance was reasonable and effective. *Bradley v. State*, 292 S.W.3d 561, 564 (Mo. App. E.D. 2009). In order to determine prejudice, Movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The standard of review for a claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel. *Tate v. State*, 461 S.W.3d 15, 22 (Mo. App. E.D. 2015). A movant must show by a preponderance of the evidence that (1) appellate counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was thereby prejudiced. *Id.* at 21.

To be entitled to an evidentiary hearing, the movant must satisfy a three-prong test: (1) he must allege facts not conclusions which, if true, would warrant relief; (2) the facts must not be refuted by the record; and (3) the matters complained of must have prejudiced the movant. *Nichols*, 409 S.W.3d at 569.

6

**Discussion**

*Point I: Ineffective Assistance of Trial Counsel*

In his first point on appeal, Movant argues that he was denied his right to due process, a fair trial, and effective assistance of counsel. Specifically, Movant argues that trial counsel was ineffective for her failure to elicit evidence (a) of a similar shooting at a neighboring house and (b) that another person had been implicated in the shooting. The State argues that Movant pleaded only conclusions and not facts which would warrant relief, any facts Movant did plead were inadmissible, and Movant failed to overcome the presumption of reasonable trial strategy.[2]

Movant argues that trial counsel was ineffective for her failure to elicit evidence of a similar shooting at a neighboring house. The record indicates that trial counsel obtained a letter the victims wrote to their bank two months before the murder indicating they felt unsafe in their neighborhood. Movant maintains that trial counsel acted unreasonably by not questioning S.H. about the letter. Although this letter indicates that there was another home in the victims' neighborhood that had been shot at, the letter gives little detail about the incident. There is no description of the event or when it occurred, and there is no other evidence in the record that further addresses these incidents. Furthermore, the letter indicates that the victims also felt unsafe in their home because Movant was stalking their daughter.

Movant also argues that trial counsel was ineffective for her failure to elicit evidence that another person was implicated in the shooting of J.H and S.H. The record indicates that trial counsel obtained a police report documenting a call received by Officer Neal regarding the

---

[2] In their response brief, the State contends this Court should not address Movant's Point I because it groups multiple allegations of error in a single point relied on in violation of Rule 84.04(d) and preserves nothing for review. However, we were able to identify each of Movant's arguments and will exercise our discretion and review Movant's allegations despite his point being multifarious. *See Castor v. State*, 245 S.W.3d 909, 914 n.6 (Mo. App. E.D. 2008).

shooting at the victims' home. The call was from Mr. S., who informed Officer Neal that S.H.'s co-worker had informed him that S.H. was selling drugs and purchasing them from Mr. K. Movant alleges that trial counsel acted unreasonably for not cross-examining S.H. or calling Officer Neal as a witness about S.H.'s relationship to Mr. K. The motion court concluded that no information from any police report, witness or evidence implicated Mr. K. in the shooting of S.H. and J.H.

Generally, choices regarding the introduction of evidence are virtually unchallengeable because these choices made in the course of representation are easy to scrutinize with the convenience of hindsight. *Matthews*, 175 S.W.3d at 115. It is not the job of this Court to second-guess every decision of trial counsel. *Id.* Rarely will trial counsel be deemed ineffective for failing to go far enough in cross-examining a witness. *State v. Parker*, 972 S.W.2d 508, 511 (Mo. App. W.D. 1998). Additionally, trial counsel's decision not to call a witness to testify is a matter of trial strategy that is virtually unchallengeable. *State v. Loggins*, 778 S.W.2d 783, 790 (Mo. App. E.D. 1989).

The information contained in the victims' letter to their bank regarding the other shooting in their neighborhood was not supported by any additional evidence. Moreover, the letter contained information about Movant stalking the victims' daughter that would have bolstered the prosecution's case and been detrimental to Movant. Therefore, since the information contained in the letter was unsupported by other evidence and contained information that would have been damaging to Movant, we cannot conclude that trial counsel's strategy was unreasonable.

Furthermore, evidence which has no other effect than to cast bare suspicion on another is not admissible. *Helmig v. State*, 42 S.W.3d 658, 671 (Mo. App. E.D. 2001). A defendant may not introduce evidence that another person had the motive or opportunity to commit the crime

8

with which the defendant is charged unless the defendant introduces evidence that the other person committed some act directly connecting him with the crime. *Id.* The information contained in the police report provides no evidence, other than bare suspicion, that connects Mr. K. to this case. Trial counsel is not ineffective for failing to present evidence that is inadmissible. *McLaughlin v. State*, 378 S.W.3d 328, 346 (Mo. banc 2012). As this evidence would be inadmissible at trial, we cannot conclude that trial counsel's strategy was unreasonable.

However, even if the evidence was admissible, the outcome of the trial would not have changed. The record is replete with evidence connecting Movant to the murder, and trial counsel's failure to further cross-examine the victim and elicit this evidence would not have changed the outcome of the trial. Therefore, Movant was not prejudiced by trial counsel's failure to elicit evidence of a similar shooting at a nearby house, or evidence that another person was implicated in the crime.

Because Movant has alleged no facts showing that trial counsel's failure to introduce this evidence was unreasonable and that Movant was thereby prejudiced, Movant has failed to meet his burden. The motion court properly denied his request for an evidentiary hearing on this issue. Point I is denied.

*Point II: Ineffective Assistance of Appellate Counsel*

In his second point on appeal, Movant again argues that he was denied his right to due process, a fair trial, and effective assistance of counsel. However, in Point II, Movant argues that appellate counsel was ineffective for his failure to raise on direct appeal preserved error in the trial court's refusal to quash the venire panel following a venireperson's "emotional outburst." The State argues that appellate counsel was not obligated to raise this point on appeal, exercised

his professional judgment, and did not have access to the alleged proof because it was not in the transcript.

Movant alleges that Juror 45's emotional reaction at the beginning of voir dire "reasonably may have [a]ffected many or all of the remaining venire persons." At voir dire, Juror 45 informed the Court that she was cousins with J.H. and S.H. The record indicates that this exchange between Juror 45 and the Court happened out of earshot of the other potential jury members. After the exchange between Juror 45 and the Court, Juror 45 was escorted from the room. Movant's trial counsel then moved to quash the entire jury panel because she believed the jurors had been tainted by Juror 45. The trial judge declined to quash the entire jury panel because although the jurors may have seen that Juror 45 was visibly upset, they did not hear that she was related to the victims. Therefore, the Court concluded that Juror 45's emotional reaction did not prejudice Movant.

The record clearly refutes Movant's allegation, as it indicates that the only time Juror 45 said why she was crying was when she was at the bench and out of earshot of the rest of the potential jurors. Furthermore, the trial court is given wide discretion on a motion to quash the entire jury panel. *State v. Hayes*, 169 S.W.3d 613, 618 (Mo. App. S.D. 2005). However, that discretion is not unfettered. *Id*. In making its determination, the court must consider the movant's right to a trial before a fair and impartial jury. *Id*. The movant bears the burden of demonstrating that the trial court erred in denying his motion to quash the jury panel. *Id*. Here, there is nothing in the record that supports Movant's allegation, and Movant does not allege any proof that anyone else on the panel heard Juror 45 tell the judge that she was related to the victims.

Therefore, appellate counsel did not act unreasonably for his failure to raise on direct appeal preserved error in the trial court's refusal to quash venire panel following Juror 45's emotional reaction. Appellate counsel had no duty to raise every non-frivolous claim on appeal, and since there is no proof, in the record or otherwise, that supports Movant's claim, there is no indication that appellate counsel's actions were unreasonable. *Tate*, 461 S.W.3d at 22. Furthermore, since the record shows that the rest of the panel did not hear Juror 45 say she was related to the victims, Movant was not prejudiced. Accordingly, Movant has failed to meet his burden, and the motion court properly denied his request for an evidentiary hearing on this issue. Point II is denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Angela T. Quigless, J. concur.

11