

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| CHRISTOPHER J. POTTER, | ) | No. ED110877 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | 2111-CC00505 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Rebeca M. Navarro-McKelvey |
| | ) | |
| Respondent. | ) | Filed: September 19, 2023 |

Thomas C. Clark, II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

### OPINION

In this ineffective assistance of counsel case, Christopher Potter appeals the denial of his Rule 29.15[1] motion for post-conviction relief following an evidentiary hearing. In the underlying criminal case, which we affirmed on direct appeal, Potter was convicted of eight counts of first-degree assault arising from a crime spree in which he targeted motorists on the roads of St. Charles County by ramming into them causing the victims' vehicles to lose control and some to leave the roadway.[2] He now claims the motion court clearly erred in denying his motion because (1) trial counsel was ineffective for failing to object to an improper hypothetical

---

[1] All rule references are to the Missouri Supreme Court Rules (2020) unless otherwise stated.
[2] Potter hit seven vehicles. Four of the vehicles had a passenger in addition to the driver, bringing the total number of victims to eleven. However, the court submitted only eight counts of assault due to the lack of proof that Potter was aware of three of the passengers.

question by the State during voir dire which sought a commitment from the panel on the issue of intent; (2) appellate counsel was ineffective for failing to raise that voir dire issue on appeal; and (3) trial counsel was also ineffective for failing to adequately impeach a witness – Potter's friend who was in his vehicle for some of the assaults – with a prior inconsistent statement. We affirm.

## Background

Potter was initially charged with thirteen counts of first-degree assault, one count of first-degree property damage, and one count of fleeing the scene of a motor vehicle accident. These charges arose after multiple motorists reported that between August 2, 2015 and July 5, 2016, each was victimized on the roads of St. Charles County by a large white pickup truck, which crashed into their vehicles forcing most of the victims' vehicles off the road. The State alleged that Potter was the culprit and that he thereby intentionally sought to injure the victims.

During voir dire, the State asked the venire panel to opine as to what purpose a hypothetical individual might have in throwing a bowling ball from a highway overpass onto traffic below. Venire panel responses included: to cause harm to or injure someone, to dispose of the ball, to conduct an experiment, to cause damage, or as a demonstration of pure stupidity or ignorance. The State then asked if such act demonstrated an intent to injure. The State ended this inquiry by asking if anyone did *not* agree with the statement that a person who throws a bowling ball off an overpass intends to cause potentially life-threatening injury. After no one responded, the prosecutor stated that he assumed the entire panel agreed that dropping a bowling ball from an overpass could cause serious, life-threatening damage. Later, the State used the bowling ball hypothetical in closing argument to reinforce its assertion that Potter's conduct demonstrated an intent to cause serious injury.

During trial, the State called twenty-five witnesses, including police officers who responded to the various accident scenes, victims, crime lab technicians, Potter's ex-girlfriend, and Potter's friend who was in the white truck during some of the incidents. Seven drivers and three passengers who were victims of the incidents testified. Six victims described being closely followed by a large white truck and being hit from behind on the rear driver's side of their vehicle causing them to lose control. The seventh victim testified that he was tailgated and then hit from behind, but was able to maintain control of his vehicle and escape. The white truck fled each scene.

The jury also saw a videotape of Potter's police interview in which he admitted that he hit two vehicles "by accident." Sixty-four paint samples were taken from Potter's truck and the victims' vehicles. A crime lab technician from the Missouri Highway Patrol matched at least three of the victims' vehicles to Potter's truck as a result of her analysis of the paint samples that had transferred between Potter's truck and five of the victims' vehicles.

Ultimately, the State submitted eight first-degree assault charges to the jury which found Potter guilty on each. The trial court sentenced him to twenty-one years in prison. Potter appealed, and this Court affirmed his convictions in an order issued pursuant to Rule 30.25(b). Potter then sought the post-conviction relief under Rule 29.15 that is the subject of this appeal.

At the evidentiary hearing, trial counsel testified regarding the State's hypothetical bowling ball question during voir dire. He said he was not aware that it is improper to seek commitments during voir dire. He believed the prosecutor's question was merely an attempt to help the jury gain a better understanding of the law generally. He admitted that intent was a key issue at trial. In fact, he requested instructions for assault second and assault third because he did not believe the State could prove that Potter intended to cause injury.

3

As for the claim that trial counsel failed to properly impeach Potter's friend, trial counsel said that after the friend told the jury that he was *not* laughing while Potter was forcing vehicles off the road, counsel sought to impeach him with the videotape of his police interview in which he stated he *was* laughing during the crimes. The trial court denied this impeachment. Nevertheless, counsel was able to reveal to the jury the friend's inconsistent story during the cross-examination of the detective who conducted the video interview.

For her part, appellate counsel testified (1) that she read the entire trial transcript, including voir dire, before filing Potter's brief; (2) that she did not believe the State's hypothetical bowling ball question was improperly seeking the jury's commitment to its theory regarding Potter's intent; (3) that nevertheless she could have "missed" the issue. Regardless, appellate counsel noted that since trial counsel failed to object, plain error review on appeal would have made the issue difficult to win on appeal.

On June 30, 2022, the motion court issued its findings of fact and conclusions of law denying Potter's post-conviction motion. This appeal follows.

## Standard of Review

We review a denial of a Rule 29.15 motion for post-conviction relief only to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Swallow v. State*, 398 S.W.3d 1, 10 (Mo. banc 2013). Findings and conclusions are clearly erroneous only when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Swallow*, 398 S.W.3d at 3. The motion court's findings should be upheld if they are sustainable on any grounds. *Id.* And we presume that the motion court's findings are correct, including the motion court's determinations as to the credibility of witnesses. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019).

4

To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must meet the two-pronged *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Anderson v. State*, 564 S.W.3d 592, 600 (Mo. banc 2018). The movant must prove by a preponderance of the evidence: (1) that counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney; and (2) that as a result thereof, the movant was prejudiced. *Anderson*, 564 S.W.3d at 600. This standard applies to both trial counsel and appellate counsel. *Hudson v. State*, 482 S.W.3d 883, 889 (Mo. App. E.D. 2016).

To succeed on the performance prong, the movant must overcome a strong presumption that counsel's performance was reasonable and effective by showing specific acts or omissions that, under the circumstances, fell outside the wide range of effective assistance. *Id.* To satisfy the prejudice prong, the movant must show that there is a reasonable probability that, but for counsel's alleged errors, the outcome would have been different. *Id.* If the movant fails to establish either prong, "then we need not consider the other and the claim of ineffective assistance must fail." *Roberts v. State*, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017).

**Discussion**

I.

Potter first asserts that the motion court clearly erred in denying his motion for post-conviction relief because he proved by a preponderance of the evidence that trial counsel was ineffective for failing to object to the State's hypothetical voir dire question, which he alleges sought the jury's commitment on the key issue of Potter's intent. Although the bowling ball hypothetical may have been an improper request for a jury commitment, we find that the motion court did not err because Potter failed to prevail on the prejudice prong of the *Strickland* analysis in light of the overwhelming evidence of his guilt.

5

"The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury." *State v. Celian*, 613 S.W.3d 380, 385 (Mo. App. E.D. 2020) (citing *State v. Clark*, 981 S.W.2d 143, 146 (Mo. banc 1998)). Voir dire is a tool used to discover bias, not to create bias. *State v. Whitt*, 461 S.W.3d 32, 39 (Mo. App. E.D. 2015). "[W]hen the inquiry includes questions phrased or framed in such manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created." *Clark*, 981 S.W.2d at 146-47. "[P]hrasing a voir dire question in such a manner which pre-conditions the panel members' minds to react, even subconsciously, in a particular way to anticipate[d] evidence is an abuse of counsel's privilege to examine prospective jurors." *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982). Moreover, "the parties may not attempt to elicit a commitment from jurors how they would react to hypothetical facts." *Celian*, 613 S.W.3d at 385.

In *Celian*, this Court found improper the State's voir dire inquiry that asked the panel to agree or disagree whether, if certain conduct were shown, the defendant should be held accountable for the described conduct. *Id.* at 387. "In soliciting the prospective jurors' feelings in light of such specifics, the State effectively sought a commitment to its desired verdict—it attempted to precondition the panel members' minds to react in a particular way to the anticipated evidence, which is an abuse of its privilege to examine prospective jurors." *Id.*

Turning now to the facts of this case, we find that the State's bowling ball hypothetical question during voir dire was improper. Although the State did not reference Potter's specific conduct (ramming into vehicles), its hypothetical—throwing a bowling ball from an overpass into traffic—posed similar, danger-causing conduct directed towards motor vehicle traffic. We see little difference between the senseless danger caused by both activities because both involve

6

creating risk, potentially life-threatening risk as the prosecution emphasized, for motorists. By seeking the panel's commitment that those hypothetical facts demonstrate an intent to cause serious personal injury, the State left the jurors little latitude to decide the issue of Potter's intent for themselves.

Nevertheless, our inquiry does not end there. We must determine if trial counsel's failure to object resulted in prejudice to Potter and we find that it did not because the evidence of Potter's intent to injure the motorists was overwhelming. *State v. Duncan*, 397 S.W.3d 541, 544 (Mo. App. E.D. 2013) ("Prejudice is not outcome-determinative when evidence of guilt is otherwise overwhelming."). Although first-degree assault requires proof of specific intent, "the necessary intent may be based upon circumstantial evidence or inferred from surrounding facts such as defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *State v. Chambers*, 998 S.W.2d 85, 90 (Mo. App. W.D. 1999) (internal citations omitted). Moreover, "intent may be inferred from conduct that would tend to cause death or serious physical injury." *State v. Moore*, 1 S.W.3d 568, 589 (Mo. App. E.D. 1999) (citing *State v. Clark*, 914 S.W.2d 441, 443 (Mo. App. E.D. 1996)). It is manifest that a reasonable juror could infer Potter's specific intent to cause death or serious physical injury from his conduct in ramming his large truck into the back of the victims' vehicles at high speed, sometimes in the dark, which forced the vehicles to lose control with some leaving the roadway.

More generally, the record overwhelmingly demonstrates that Potter was the culprit. The victims and witnesses testified to nearly identical scenarios that occurred on multiple occasions. Five of the incidents occurred during a five-day window of time which belies Potter's initial claim that he "accidentally" struck two of the vehicles. Each witness consistently described a white truck like Potter's aggressively tailing them. Multiple victims slowed to allow the truck to

7

pass, but instead the truck struck the back of their vehicle causing their vehicle to leave the roadway. Paint transferred between the white truck and at least three of the victim's vehicles. Though he told police multiple conflicting stories, Potter eventually admitted he intentionally forced several vehicles off the road and then painted the brush guard on the front of his truck to conceal evidence that he had hit other vehicles. Potter's friend also testified that he was with him during a few of the incidents. Thus, the motion court did not clearly err in denying this claim because Potter did not show that he was prejudiced by trial counsel's failure to object to the improper voir dire hypothetical.

## II.

In his second point on appeal, Potter asserts that appellate counsel was ineffective for failing to raise the voir dire issue addressed in Point I. We disagree.

To prevail on a claim of ineffective appellate counsel, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective attorney would have recognized and asserted it." *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994). "The claimed error must have been sufficiently serious to create a reasonable probability that, if it was raised, the outcome of the appeal would have been different." *Teer v. State*, 198 S.W.3d 667, 669 (Mo. App. E.D. 2006) (citing *Tisius v. State*, 183 S.W.3d 207, 215 (Mo. banc 2006)). Appellate counsel has no duty to raise every possible issue asserted in the motion for new trial on appeal and "no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments . . . ." *Mallett v. State*, 769 S.W.2d 77, 83-84 (Mo. banc 1989). "[C]ounsel may strategically decide to forgo certain

8

arguments in favor of others." *Meiners v. State*, 540 S.W.3d 832, 838 (Mo. App. E.D. 2018) (citing *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005).

It is apparent on this record that appellate counsel strategically decided not to raise the voir dire issue. Appellate counsel testified that she did not seriously consider raising the voir dire issue. Her reasoning included that the error was unpreserved and that she did not consider the question to have been an obvious attempt to seek a commitment from the venire panel. Moreover, counsel was cognizant that as an unpreserved error, the plain error review standards made reversal on that issue unlikely particularly since the overwhelming evidence of Potter's guilt gutted any finding of manifest injustice.

Therefore, we will not convict the motion court of clear error when appellate counsel made a strategic decision not to raise the voir dire claim and Potter failed to show that the outcome of the appeal would have been different had she asserted the claim.

III.

Lastly, we address Potter's contention that the motion court clearly erred because trial counsel was ineffective for failing to impeach Potter's friend with a prior inconsistent statement he made to police that he was laughing as Potter ran vehicles off the road after he testified at trial that he was not laughing. We again disagree.

"[T]rial counsel's failure to impeach a witness does not alone constitute ineffective assistance of counsel." *Davidson v. State*, 308 S.W.3d 311, 317 (Mo. App. E.D. 2010) (citing *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997)). "'If a prior inconsistent statement by a [S]tate's witness does not give rise to a reasonable doubt as to the Movant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel.'" *Johnson v. State*, 406 S.W.3d 892, 904 (Mo. banc 2013) (quoting *State v. Twenter*, 818 S.W.2d

9

628, 640 (Mo. banc 1991)). Moreover, to establish ineffective assistance of counsel for failure to impeach a witness, the movant must show that the impeachment "would have provided the defendant a viable defense or otherwise changed the outcome of the trial." *Payne v. State*, 509 S.W.3d 830, 837 (Mo. App. W.D. 2016).

In *Payne*, the Court held that the movant failed to demonstrate how counsel's failure to impeach a witness would have provided him with a defense or changed the outcome of trial because counsel was able to elicit an admission from the victim that he had a bad memory and that some of his memories were false. 509 S.W.3d at 837-38. Similarly, here, trial counsel was able to bring forth the witness's contradictory statements by using the detective's testimony to argue that the witness was lying and not credible. Trial counsel also referred to the inconsistent statement in his closing argument and suggested that the jury should consider the witness's credibility, or lack thereof. Therefore, Potter has failed to show that a "proper" impeachment would have provided him with a viable defense or otherwise changed the outcome of trial. Moreover, he has failed to show that he was prejudiced because trial counsel successfully elicited the information that he wanted to bring to the jury's attention. Point III is denied.

### Conclusion

For the reasons stated above, we affirm the trial court's judgment.

_____
James M. Dowd, Judge

Thomas C. Clark, II, P.J., and
John P. Torbitzky, J. concur.

10