

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| MARK C. BRANDOLESE, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) WD86710 |
| | ) |
| STATE OF MISSOURI, | ) Filed: May 27, 2025 |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Pettis County
The Honorable Robert L. Koffman, Judge**

**Before Division Two: Janet Sutton, P.J., and
Alok Ahuja and Mark D. Pfeiffer, JJ.**

Following a jury trial in the Circuit Court of Pettis County, Mark Brandolese was convicted of second-degree domestic assault and armed criminal action. Following the affirmance of his convictions on appeal, Brandolese filed a motion for post-conviction relief. The circuit court denied his amended motion following an evidentiary hearing. Brandolese appeals. He argues that his trial counsel was ineffective: for failing to sufficiently examine a venire member to establish a basis to strike the venire member for cause; for failing to argue that the venire member was disqualified by statute; and for failing to peremptorily strike the venire member. Brandolese also argues that his appellate counsel was

ineffective for failing to challenge the circuit court's exclusion of an exculpatory statement Brandolese made to a police officer. We affirm.

## Factual Background

In March 2016, Victim[1] was living with Brandolese in Sedalia. On March 6, 2016, Neighbor, who lived across the street from Victim and Brandolese, came to her front door to find Victim with "gashes and blood" all over his face. Neighbor called 9-1-1.

A police officer ("First Officer") arrived to find Victim on Neighbor's front porch. First Officer testified that Victim appeared intoxicated. First Officer observed a cut across Victim's chest.

First Officer followed a trail of blood from Neighbor's house across the street to the house in which Brandolese and Victim lived. First Officer entered and found Brandolese sitting in a recliner holding a cane. Brandolese had blood on his left hand and on his cane. First Officer testified that Brandolese appeared intoxicated. First Officer asked Brandolese what happened. Brandolese told First Officer that he had an altercation with Victim, which started when Victim punched Brandolese while Brandolese was sleeping in his recliner. Brandolese stated that the fight progressed from the living room, into the bathroom, and then outside of the house. Brandolese said that he struck Victim with his cane, and cut him with a knife. First Officer found a pocket knife in the living room.

Brandolese was charged with second-degree domestic assault, armed criminal action, and unlawful use of a weapon. (The State later dismissed the unlawful use of a weapon charge.)

---

[1] Pursuant to § 509.520.1(5), RSMo, we do not provide the names of any non-party witnesses in this opinion.

A jury trial was held on May 3-4, 2017. Brandolese's defense centered on the claim that Victim had started the fight that led to his injuries, and that Brandolese only struck or stabbed Victim in self-defense.

During jury selection, Venireperson No. 16 indicated in her jury questionnaire, and during voir dire, that her brother was an assistant prosecutor in the Pettis County Prosecutor's Office. Venireperson No. 16's brother signed the original complaint charging Brandolese, which was filed on March 6, 2016. Venireperson No. 16's brother also represented the State at three hearings prior to the State indicting Brandolese on June 1, 2016.

Venireperson No. 16 was not asked whether her relationship to an assistant prosecutor would prevent her from being fair and impartial, or whether she had any foreknowledge of the facts of the case. After voir dire, defense counsel moved to strike Venireperson No. 16 for cause, based on her relationship to one of the prosecuting attorneys. Defense counsel argued generally that Venireperson No. 16 could not be fair or impartial; counsel did not contend that Venireperson No. 16 was disqualified by statute from serving on the jury.

The circuit court refused to strike Venireperson No. 16, because she had not been asked whether she could be impartial despite her relationship to a member of the prosecutor's office:

> [T]he question wasn't asked . . . [¶] to delve into [whether] she couldn't be fair. It just – all the question was, she's [the assistant prosecutor's] sister, nothing on why she can't be fair. I'm not taking that one for cause. . . . [¶] . . . I don't even know if it's a beloved brother. I didn't hear any evidence to that, either. The questions that would [establish] prejudice . . . have not been asked.

3

At trial, First Officer testified that, when he spoke to Brandolese, Brandolese claimed that Victim had started the altercation by punching Brandolese while Brandolese was sleeping. A Second Officer who had a subsidiary role in investigating the incident also testified. During cross-examination, Second Officer agreed that he "heard Mr. Brandolese say he had the right to defend himself." Defense counsel then asked Second Officer if Brandolese had also said that "he was sleeping in his chair when [Victim] struck him in the face." Second Officer testified that he could not recall. When defense counsel sought to confront Second Officer with his deposition testimony, the State objected. The State contended that any statements by Brandolese that Victim started the fight would be "self-serving hearsay." Defense counsel argued that he should be entitled to use Second Officer's deposition testimony to impeach him, because Second Officer "just fibbed" by claiming that he could not recall Brandolese saying anything about how the fight started. The circuit court sustained the State's objection.

The State concluded its closing argument by discussing the self-defense instruction. It argued:

> Certainly, everybody heard the Court read this self-defense instruction. And I have absolutely no doubt that [defense] counsel is going to want to talk about that, because, you know, again, it's a drunken brawl. I want to suggest one thing to you. The self-defense instruction is being given to you, and then if I ask why, that's what you should be asking yourself.
>
> . . . .
>
> Why? Let me tell you how we got to the point of that instruction being there. At some point – and [First] Officer . . . did testify to this, if memory serves me right. At some point during his confession to the – to what transpired, *Mr. Brandolese said one*

4

*thing – one thing that led to that entire instruction.* He said, well, I was sitting in my chair and he punched me. Punched him.

My very next question, well, did you see any marks on Mr. Brandolese's face consistent with being punched? No. Did you see any marks on his body consistent with being punched? No. Did you see any marks on his body at all, indicating that he had been in an altercation? No. Nothing on Mr. Brandolese indicates that he was in any fear, risk, danger, assaulted, anything. *But that one sentence gets us to that instruction.*

(Emphasis added.)

The jury found Brandolese guilty of both charges submitted to it. The circuit court sentenced Brandolese to concurrent sentences of fifteen years' imprisonment for second-degree domestic assault, and ten years for armed criminal action.

Brandolese appealed. On December 26, 2018, this Court issued an opinion reversing Brandolese's convictions. *State v. Brandolese*, No. WD80893, 2018 WL 6738896 (Mo. App. W.D. Dec. 26, 2018). We held that the circuit court had plainly erred in permitting Venireperson No. 16 to be seated, when she was the sister of an assistant prosecuting attorney who had participated in Brandolese's prosecution. *Id.*, 2018 WL 6738896, at *3. We held that Venireperson No. 16's participation in Brandolese's trial violated § 494.470.1, RSMo, which provides that "no person who is kin . . . to the . . . prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause."

The Missouri Supreme Court granted transfer, and affirmed Brandolese's convictions. *State v. Brandolese*, 601 S.W.3d 519 (Mo. 2020). With respect to Brandolese's claim concerning Venireperson No. 16, the Court found that

5

Brandolese had failed to show that he had suffered a manifest injustice warranting plain-error relief.

> Although Brandolese claims the circuit court's failure to disqualify Juror No. 16 pursuant to section 494.470.1 violated his right to a fair and impartial jury resulting in manifest injustice, there is no evidence or allegation beyond the alleged unpreserved error itself that Brandolese suffered an unfair or unjust trial. Brandolese, therefore, has not met his burden to establish manifest injustice.

> To be sure, a juror who cannot be fair and impartial should be stricken for cause to ensure a fair and just trial. However, Brandolese does not allege nor demonstrate that Juror No. 16 was unfair or partial causing a manifest injustice in his trial. Brandolese points to no statement by Juror No. 16 that she was biased or partisan due to her relationship with her brother, nor does he present any other evidence of unfairness, nor could he. Juror No. 16's only relevant statement during jury selection responded to a question whether she was related to [the assistant prosecutor], and no further questions were posed to Juror No. 16 about her relationship with her brother or its effect on her ability to render an impartial and unbiased verdict. Previously, this Court has not found reversible error after the defendant failed to ask the "obvious questions" to show prejudice by a member of the jury panel. Because Brandolese has not shown or even alleged Juror No. 16 was biased or unfair, he cannot establish manifest injustice warranting plain error review and relief.

> Moreover, Brandolese has not shown or even alleged that Juror No. 16 was aware of [her brother's] participation in Brandolese's pretrial proceedings. . . . This Court cannot presume or impute bias to Juror No. 16 without some evidence or suggestion the juror knew her brother was involved in an early stage of the prosecution.

601 S.W.3d at 526-27 (cleaned up).

The Supreme Court's opinion stated that "an individual who meets the criteria for disqualification under section 494.470.1 should be disqualified and

excused." *Id.* at 530. The Court also held, however, that service on the jury of a statutorily disqualified individual did not, standing alone, establish a constitutional violation: "[t]he constitutional right to a fair and impartial jury . . . does not itself require the exclusion of any juror within a certain degree of consanguinity or with another personal relationship to one of the parties." *Id.* at 529 (citation omitted).

The Supreme Court's mandate issued on July 16, 2020. On August 7, 2020, Brandolese filed a *pro se* motion for post-conviction relief. The circuit court appointed the Public Defender's Office to represent him. On October 20, 2020, appointed counsel filed a motion for a thirty-day extension to file an amended motion. The extension motion was never ruled on by the circuit court.

Brandolese's amended motion was filed on November 29, 2020. The amended motion alleged that Brandolese's trial counsel was ineffective for failing to more thoroughly question Venireperson No. 16 concerning her relationship with her brother the prosecutor; for failing to argue that Venireperson No. 16 was disqualified from serving as a juror by operation of § 494.470.1, RSMo; and for failing to peremptorily strike Venireperson No. 16. The Amended Motion also argued that Brandolese's appellate counsel was ineffective for failing to argue on appeal that the circuit court had erred by denying Brandolese the opportunity to impeach Second Officer with his deposition testimony, in which Second Officer had testified that Brandolese claimed that Victim started the fight.

The circuit court held an evidentiary hearing on Brandolese's post-conviction relief motion on January 4, 2022, at which Brandolese's trial and appellate counsel testified. After the hearing, the circuit court entered its

7

Findings of Fact and Conclusions of Law denying Brandolese's motion for post-conviction relief on January 6, 2022.

Brandolese appealed. On May 2, 2023, this Court issued an opinion finding that, because no extension of time was ever granted by the circuit court, Brandolese's amended motion for post-conviction relief was untimely. *Brandolese v. State*, 666 S.W.3d 309, 310-11 (Mo. App. W.D. 2023). Because Brandolese's amended motion was not timely filed by appointed counsel, we held that the circuit court was required to determine whether Brandolese had been abandoned by appointed counsel. *Id.* at 311. We accordingly reversed the circuit court's order denying Brandolese post-conviction relief. *Id.* We remanded the case to the circuit court for it "to make an independent inquiry into whether Brandolese was abandoned by appointed post-conviction counsel, and for further proceedings consistent with the motion court's determination of the abandonment issue." *Id.*

On remand, the circuit court issued supplemental Findings of Fact and Conclusions of Law on October 10, 2023. The circuit court found that, although appointed counsel filed a timely entry of appearance and motion for extension of time, "the Court did not rule [on the extension motion] because it was not noticed up for hearing by the proponent." Because the untimeliness of Brandolese's amended motion was due to appointed counsel's conduct, the court found that Brandolese had been abandoned by appointed counsel. The circuit court reinstated its prior Findings of Fact and Conclusions of Law denying Brandolese's post-conviction relief motion.

Brandolese again appeals.

## Discussion

Brandolese asserts four Points on appeal, asserting that the circuit court erroneously rejected his claims that he was entitled to a new trial because his trial and appellate counsel provided him with ineffective assistance.

> [T]he standard of review for postconviction matters is what Rule 29.15(k) and Rule 24.035(k) say it is, *i.e.*, that "review of the trial court's action . . . shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." [T]his includes *de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and – in the rarest of cases – rejection of factual findings for which there may be substantial evidence but regarding which the reviewing court, nevertheless, on the entire record, is left with a definite and firm conviction (or impression) that a mistake has been made. In applying this standard, appellate courts should defer to the motion court's superior opportunity to judge the credibility of witnesses and recognize the circuit court is entitled to believe all, part, or none of the evidence presented at the post-conviction hearing.

*Flaherty v. State*, 694 S.W.3d 413, 419 (Mo. 2024) (cleaned up).

To establish ineffective assistance of counsel, a postconviction relief movant bears the burden of overcoming the "strong presumption" that counsel was competent. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The movant must prove, by a preponderance of the evidence, that counsel's performance fell "outside the wide range of professionally competent assistance." *Id*. at 690. A postconviction relief movant must also establish that they were prejudiced by counsel's deficient performance; namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of

9

the alleged deficiencies." *Id*. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

## I.

Brandolese argues in his first Point that trial counsel provided ineffective assistance when he failed to adequately question Venireperson No. 16, in order to establish a basis to strike her from the venire for cause. Brandolese contends that he was prejudiced by counsel's failure to examine Venireperson No. 16 more thoroughly, because "such an inquiry would have elicited bias harbored by [Venireperson No. 16] arising from her relationship with her brother, which would have supported the strike for cause, and thereby led to [Venireperson No. 16] being stricken from the jury."

In its order denying postconviction relief, the circuit court noted that one of Brandolese's trial attorneys "testified that when the general jury questionnaires were received before trial, a discussion was had in the Public Defender's office that [Venireperson No. 16] was on the venire panel." Because the issue was discussed, but the defense team chose not to strike Venireperson No. 16, the circuit court concluded that the defense had strategic reasons for keeping Venireperson No. 16 on the jury. The court also found that Brandolese had failed to prove that he was prejudiced by Venireperson No. 16's participation in the trial. The court noted that, "[e]v[e]n at this moment, there is no evidence in this post-conviction proceeding to indicate that [Venireperson No. 16] was biased in some way, or had talked to her brother, or even knew about the facts of the case before she was seated as a juror."

We need not address the circuit court's conclusion that Brandolese's trial counsel had strategic reasons for keeping Venireperson No. 16 on the jury, because the circuit court did not clearly err in concluding that Brandolese failed to demonstrate that he was prejudiced by Venireperson No. 16's presence on the jury.[2]

In order for Brandolese to establish a right to post-conviction relief based on ineffective assistance of counsel, it was necessary for him to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It would be difficult – if not impossible – for a movant to establish a reasonable probability that a verdict would have been different if a particular individual had not been on their jury. Missouri courts have held, however, that a presumption of prejudice may arise where counsel performed deficiently in jury selection; to give rise to this presumption, "a post-conviction movant must show that a biased venireperson ultimately served as a juror." *Hultz v. State*, 24 S.W.3d 723, 726 (Mo. App. E.D. 2000) (citing *State v. Pierce*, 927 S.W.2d 374, 377 (Mo. App. W.D. 1996)); *accord, Wadlow v. State*, 518 S.W.3d 872, 876-77 (Mo. App. S.D. 2017).

In this case, the circuit court did not clearly err in finding that Brandolese failed to present evidence proving, by a preponderance of the evidence, that Venireperson No. 16 was actually biased; he was therefore not entitled to a

---

[2]    Although the circuit court found that Brandolese's counsel had strategic reasons for not striking Venireperson No. 16, we note that defense counsel actually moved to strike her for cause. That motion was denied because counsel had not sufficiently questioned Venireperson No. 16 concerning her ability to serve impartially.

presumption that the verdict may have been different if she had not participated on the jury.  The fact that Venireperson No. 16 was related to one of the assistant prosecutors who took part in Brandolese's prosecution is not – on its own – enough to establish that she was actually biased against him.  In Brandolese's direct appeal, the Missouri Supreme Court found that "Brandolese has not shown or even alleged Juror No. 16 was biased or unfair" based simply on her relationship to one of the prosecutors, where "no further questions were posed to Juror No. 16 about her relationship with her brother or its effect on her ability to render an impartial and unbiased verdict."  601 S.W.3d at 527.  The Supreme Court also held that Brandolese had failed to establish a violation of his "constitutional right to a fair and impartial jury" based solely on the familial relationship between Venireperson No. 16 and a prosecutor.

The Supreme Court's decision in Brandolese's direct appeal plainly held that *something more* was needed to establish that Venireperson No. 16 was biased against Brandolese, beyond the bare fact that her brother was a Pettis County prosecutor.  But during this postconviction relief proceeding Brandolese offered nothing to establish Venireperson No. 16's partiality, beyond the record that was before the Supreme Court in his direct appeal.  In these circumstances, the circuit court did not clearly err in concluding that Brandolese had failed to establish that he was prejudiced by counsel's failure to more searchingly question Venireperson No. 16.

The gap in Brandolese's evidence is evident from an additional perspective.  Brandolese's claim in his first Point is that his trial counsel failed to conduct a sufficient examination of Venireperson No. 16; he contends that additional

12

examination would have revealed information which would have permitted Brandolese to have Venireperson No. 16 stricken for cause. In essence, Brandolese' first claim is that counsel failed to conduct an adequate investigation of Venireperson No. 16's qualifications. Numerous cases hold, however, that where a movant claims that his counsel was ineffective for failing to conduct an adequate investigation, the movant must prove *what an adequate investigation would have discovered. See, e.g.*, *Harris v. State*, 666 S.W.3d 263, 267 (Mo. App. E.D. 2023) (in order to prove ineffective assistance based on counsel's failure to adequately investigate, a movant "must allege and prove the information a reasonable investigation would have revealed and how that information would have aided his defense"; citing *Anderson v. State*, 66 S.W.3d 770, 776 (Mo. App. W.D. 2002)); *Ervin v. State*, 423 S.W.3d 789, 793 (Mo. App. E.D. 2013) ("to succeed on a claim for ineffective assistance of counsel for failing to investigate, the movant must specifically allege and prove what the information was that counsel failed to discover, whether a reasonable investigation would have revealed the evidence, and how the information would have helped the movant"; also citing *Anderson*).

The Missouri Supreme Court has held that a movant cannot prove that they were prejudiced by counsel's failure to adequately examine venirepersons during voir dire without some basis to conclude that additional examination would have discovered disqualifying bias. *Glass v. State*, 227 S.W.3d 463 (Mo. 2007), was a postconviction relief proceeding in a death-penalty case. The movant claimed that his counsel was ineffective for failing to ask venire members whether they would consider various circumstances as mitigation during the

13

penalty phase of his trial. *Id.* at 474. The Supreme Court rejected the movant's ineffective assistance claim because there was no evidence that the jurors who served would *not* consider all relevant evidence: "Although trial counsel testified that it was a mistake not to question the venire panel regarding these matters, Glass made no showing at the evidentiary hearing that the jurors were unable or unwilling to consider the evidence presented." *Id.* The same is true here: although trial counsel may have performed deficiently in failing to question Venireperson No. 16 more thoroughly, there is no basis to find that additional examination would have discovered a disqualifying bias.

Brandolese' opening Brief confidently asserts that additional examination "would have elicited bias harbored by [Venireperson No. 16] arising from her relationship with her brother." But Brandolese cites to nothing in the record to support this statement, and our review of the transcript of the evidentiary hearing reveals *no evidence* which would support the conclusion that Venireperson No. 16 was actually biased in the State's favor. "Allegations in a postconviction motion are not self-proving; rather, a movant bears the burden to prove his claim of ineffective assistance by a preponderance of the evidence." *Gittemeier v. State*, 527 S.W.3d 64, 71 (Mo. 2017). "Movant's failure to introduce sufficient supporting evidence at the evidentiary hearing is fatal to his post-conviction claim." *Taylor v. State*, 649 S.W.3d 378, 384 (Mo. App. E.D. 2022) (citation omitted).

If anything, the record from Brandolese's trial suggests that Venireperson No. 16 did *not* harbor any disqualifying bias. During voir dire, the prosecution and defense asked generally if any member of the venire: would not be able to

14

follow the court's instructions; felt that they could not be fair and impartial; would be unable to presume that Brandolese was innocent until proven guilty; or had any preexisting knowledge of the case. Venireperson No. 16 did not respond to any of these questions.

Because Brandolese failed to demonstrate that further examination of Venireperson No. 16 would have established grounds to strike her for cause, the circuit court did not clearly err in finding that Brandolese was not entitled to post-conviction relief because of trial counsel's failure to further question her.

Point I is denied.

## II.

Brandolese's second Point argues that the circuit court clearly erred in denying his claim that trial counsel was ineffective for failing to argue that Venireperson No. 16 was disqualified from serving on his jury under § 494.470.1, RSMo.

Section 494.470.1 provides in relevant part: "no person who is kin to the . . . prosecuting or circuit attorney in a criminal case within the fourth degree of consanguinity or affinity shall be sworn as a juror in the same cause." In Brandolese's direct appeal, the Supreme Court's majority opinion assumed – without deciding – that § 494.470.1 applied to an assistant prosecuting attorney, not *just* to the elected county prosecutor. *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. 2020). While the majority opinion did not decide the question, a majority of the Court's members stated that § 494.470.1 *did* apply to the assistant prosecuting attorney involved in Brandolese's case. *See id.* at 536 (Russell, J., concurring in part and dissenting in part); *id.* at 540 (Draper, C.J., joined by Stith

and Breckenridge, JJ., dissenting).  Moreover, *if* Venireperson No. 16 was statutorily disqualified, removing her from the venire would have been *required*: as the majority opinion in Brandolese's direct appeal recognized, "an individual who meets the criteria for disqualification under section 494.470.1 should be disqualified and excused."  *Id.* at 530.

Thus, it appears that the circuit court would have been *required* to strike Venireperson No. 16 if Brandolese's trial counsel had invoked § 494.470.1.  Nevertheless, like Brandolese's other claims involving Venireperson No. 16, Brandolese's claim concerning the disqualification statute fails because he did not prove that Venireperson No. 16 was actually biased against him, and that he was therefore prejudiced by counsel's inaction.

In his Brief, Brandolese essentially argues that the fact that Venireperson No. 16 was statutorily disqualified *establishes* that she could not be fair and impartial in his case.  Thus, he argues that "[b]ecause of counsel's failure to strike [Venireperson No. 16] for cause on the basis that she is statutorily disqualified, [Brandolese] was denied a fair trial by a qualified jury."

In Brandolese's direct appeal, the Supreme Court rejected his argument that service by a statutorily disqualified juror established a violation of a defendant's right to a fair and impartial jury.  The Court explained:

> Brandolese suffered no constitutional infirmity when [Venireperson] No. 16 served on the jury even if [Venireperson No. 16] was statutorily disqualified.  The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 18(a) of the Missouri Constitution guarantee a criminal defendant the right to a fair and impartial jury.  The constitutional right to a fair and impartial jury, however, does not itself require the exclusion of any juror within a certain degree of consanguinity or with another personal relationship to one of the parties.  Absent a federal

constitutional violation, states have the power to decide whether an error in violation of state statute requires automatic reversal.

*Id.* at 529–30 (cleaned up).

Given the decision in Brandolese's direct appeal, Brandolese cannot establish that he was denied a fair and impartial jury solely on the basis that Venireperson No. 16 was disqualified under § 494.470.1, RSMo. And, as explained in § 1 above, Brandolese offered no evidence, beyond the familial relationship, to show that Venireperson No. 16 was actually biased. The circuit court did not clearly err in rejecting Brandolese's statutory disqualification claim.

Point II is denied.

## III.

In his third Point, Brandolese argues that the circuit court clearly erred in denying his motion for post-conviction relief based on trial counsel's failure to peremptorily strike Venireperson No. 16 from the venire.

Brandolese's claim concerning counsel's failure to peremptorily strike Venireperson No. 16 suffers from similar defects to his other claims concerning Venireperson No. 16. Once again, Brandolese's claim fails because he did not present any evidence that Venireperson No. 16 was actually biased against him.

In *Steele v. State*, 551 S.W.3d 538 (Mo. App. E.D. 2018), the Eastern District summarized the relevant caselaw concerning a claim of ineffective assistance based on counsel's failure to peremptorily strike a juror:

> To succeed on a claim that counsel was ineffective for failing to strike a veniremember peremptorily or for cause, [a movant] must establish that, *inter alia*, "a juror who was actually biased sat on the petit jury." *Byrd v. State*, 329 S.W.3d 718, 723 (Mo. App. S.D. 2010) (quoting *State v. Davis*, 963 S.W.2d 317, 330 (Mo. App. W.D. 1997)). An unqualified juror is a juror with views that substantially impair his or her ability to perform in accordance with the court's

instructions and his or her oath.  *McGuire v. State*, 523 S.W.3d 556, 564 (Mo. App. E.D. 2017).  ***The mere possibility of bias or prejudice is not sufficient to disqualify a potential juror; instead, the evidence must clearly reveal that the challenged juror was, in fact, biased or prejudiced***.  *See Pearson v. State*, 280 S.W.3d 640, 646 (Mo. App. W.D. 2009).  If the juror at issue was not actually biased, then trial counsel was not ineffective in failing to strike him or her from the jury.  *Thompson v. State*, 437 S.W.3d 253, 263 (Mo. App. W.D. 2014).

*Steele*, 551 S.W.3d at 547 (emphasis added).

As we have explained in § I, above, Brandolese presented no evidence to show that Venireperson No. 16 was actually biased and incapable of serving impartially on his jury, beyond the simple fact of her relationship to an attorney in the prosecutor's office.  As explained in § I, and as found by the Supreme Court in Brandolese's direct appeal, the familial relationship alone is insufficient to establish actual bias on the part of Venireperson No. 16.  Without a showing of actual bias, Brandolese has failed to establish a basis for postconviction relief based on his trial counsel's failure to exercise a peremptory strike against Venireperson No. 16.

Point III is denied.

## IV.

Brandolese's fourth Point argues that the circuit court erred in denying his claim of ineffective assistance by his *appellate* counsel.  Brandolese claims appellate counsel was ineffective for failing to argue that the circuit court improperly excluded evidence that Second Officer heard Brandolese claim that Victim started the fight.

The circuit court rejected this claim, finding that Brandolese's statement that Victim was the initial aggressor was hearsay.  The circuit court concluded

18

that its exclusion of evidence of Brandolese's exculpatory statements would not have justified reversal on appeal.

> The statements that defendant sought to introduce at trial about claims of self-defense were out-of-court statements offered by [Brandolese] for the truth of the content and were directed at an ultimate issue in the case. Because the movant was not testifying at trial, the prosecutor would not have been able to cross examine the declarant as to those statements. Those statements were boot-strapping hearsay and were not admissible and in this Court's opinion trial counsel [*sic*] would have not been successful in appealing the Court's evidentiary ruling.

"The standard of review for claim of ineffective assistance of appellate counsel is essentially the same as that used in a claim against trial counsel." *Hudson v. State*, 482 S.W.3d 883, 889 (Mo. App. E.D. 2016) (citing *Tate v. State*, 461 S.W.3d 15, 22 (Mo. App. E.D. 2015)).

> To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it. He must also prove that, if counsel had raised the claims, there is a reasonable probability the outcome of the appeal would have been different.

*William v. State*, 637 S.W.3d 396, 400 (Mo. App. W.D. 2021) (cleaned up); *see also Hudson v. State*, 482 S.W.3d at 889.

"[A]ppellate counsel has 'no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." *Baumruk v. State*, 364 S.W.3d 518, 539 (Mo. 2012) (citation omitted). In particular, "[a]ppellate counsel is not ineffective for failing to raise unpreserved allegations of error." *Tisius v. State*, 183 S.W.3d 207, 213 (Mo.

2006). "Where an alleged error that was not raised was not preserved, the right to relief due to ineffective assistance of appellate counsel tracks the plain error rule and requires that the error not raised be so substantial as to amount to a manifest injustice or a miscarriage of justice." *Anderson v. State*, 196 S.W.3d 28, 36 (Mo. 2006).

The circuit court concluded that testimony from Second Officer, that Brandolese had claimed Victim started the fight, was inadmissible hearsay. Brandolese does not directly challenge that conclusion. Instead, Brandolese contends that his appellate counsel should have argued that the "rule of completeness" required that Second Officer be permitted to testify that Brandolese had claimed that Victim started the fight by punching Brandolese while Brandolese was sleeping.

There are multiple problems with Brandolese's argument. As an initial matter, Brandolese was allowed to ask Second Officer – without objection from the State – whether "Mr. Brandolese said he was sleeping in his chair when [Victim] struck him in the face." Second Officer testified that he did not recall Brandolese making that statement. Defense counsel then attempted to use Second Officer's deposition testimony, in which Second Officer had testified that Brandolese *had* claimed that Victim was the initial aggressor, to impeach Second Officer's trial testimony. The State objected, and the circuit court sustained that objection.

Thus, Brandolese was permitted to ask Second Officer about Brandolese's exculpatory statement – Second Officer simply did not recall it. And with respect to the deposition testimony, Brandolese's counsel did not argue that he should be

20

permitted to use it under the rule of completeness.  Instead, counsel argued that the deposition testimony was a prior inconsistent statement that counsel could use to show that Second Officer had "fibbed" in his trial testimony.  The circuit court rejected defense counsel's rationale, on the basis that defense counsel had not established that Second Officer's lack of recollection at trial was inconsistent with his deposition.

Because Brandolese's trial counsel did not invoke the rule of completeness during trial, that issue was not preserved for appellate review.  "In the context of preserving for appellate review alleged error in the trial court's exclusion of proffered evidence, a defendant's theory of admissibility must be presented to or decided by the trial court."  *State v. Schwarz*, 702 S.W.3d 129, 144 (Mo. App. W.D. 2024); *accord*, *State v. Moore*, 682 S.W.3d 436, 443-44 (Mo. App. S.D. 2024).  Although Brandolese relied on the rule of completeness in his motion for new trial, that was not sufficient to preserve the issue where it was not raised during the trial itself.  *State v. Loper*, 609 S.W.3d 725, 732-33 (Mo. 2020); *State v. Walter*, 479 S.W.3d 118, 123 (Mo. 2016) ("including a claim of error that was not raised at trial in a motion for a new trial does not change the standard of review from plain error to the lower standard of review for an abuse of discretion").

The rule-of-completeness issue would have accordingly been reviewable only for plain error.

> In conducting plain error review, the Court conducts a two-step process:
>
> The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.  All

21

prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear. If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

Moreover, to obtain a new trial on direct appeal based on a claim of plain error, the appellant must show the error was outcome determinative.

*State v. Mills*, 687 S.W.3d 668, 675 (Mo. 2024) (cleaned up).

Appellate counsel could not have established an "evident, obvious, and clear" error, resulting in a manifest injustice, based on the exclusion of Second Officer's deposition testimony.

The rule of completeness provides that when either party introduces part of an act, occurrence, transaction, or statement, the opposing party may introduce or inquire into other portions of the whole in order to rebut adverse inferences that might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. In short, the purpose of the rule is to ensure no party admits portions of an exhibit out of context.

*State v. Graham*, 529 S.W.3d 363, 366–67 (Mo. App. E.D. 2017) (cleaned up).

The rule of completeness has two attributes. The rule of completeness "only applies when the item sought to be introduced is part of a greater whole." In addition, the rule of completeness only applies where "[t]he parts introduced to complete the whole . . . relate to the same subject matter" as that which has been admitted.

*State v. Ellis*, 512 S.W.3d 816, 826 (Mo. App. W.D. 2016) (cleaned up).

It is unclear whether the exculpatory statement which Second Officer may have heard is the same statement Brandolese made to First Officer. Whether it is the same statement or not, there is no reasonable probability that appellate counsel could have established plain error. If Second Officer merely overheard the statement made to First Officer, First Officer had already testified to that

statement, without objection from the State: First Officer testified that "Mr. Brandolese told me that . . . [he] was sleeping, and [Victim] walked up to him and punched him in the face"; First Officer also agreed that "Mr. Brandolese indicated to [First Officer] that he himself had been assaulted." If Second Officer's excluded deposition testimony referred to this same statement, the exclusion of this cumulative evidence would not constitute plain error. *See Collings v. State*, 543 S.W.3d 1, 14 (Mo. 2018) ("a defendant does not suffer manifest injustice when a trial court excludes cumulative evidence"; citing *State v. Glass*, 136 S.W.3d 496, 519 (Mo. 2004)).

Brandolese would not have been able to establish plain error, even if Second Officer's deposition testimony was that Brandolese made a separate, additional statement that Victim instigated the fight. If the exculpatory statement Second Officer heard was an independent statement, there is no indication that it was part of a *larger* statement which was admitted through questioning by the State. The State had not elicited *other* testimony from Second Officer concerning Brandolese's statements, which the excluded deposition testimony was needed to complete. The State did not ask Second Officer about Brandolese's statements – only defense counsel did. Moreover, admission of Second Officer's testimony concerning Brandolese's exculpatory statement would not be admissible to "complete" Brandolese's lengthy statement about the assault to First Officer, because "[d]ifferent statements made at different times than the admitted statement are not admissible under the rule of completeness." *Graham*, 529 S.W.3d at 367 (citing *State v. Chambers*, 891 S.W.2d 93, 103 (Mo. 1994)).

23

In his brief, Brandolese points out that, in closing argument, the State argued that the self-defense instruction had been given by the Court because Brandolese had "said one thing," "one sentence," claiming that Victim started the fight. Brandolese argues that the State was only able to argue that the self-defense instruction was based on a single statement, because it successfully objected when Brandolese attempted to introduce Second Officer's deposition testimony. (This argument presupposes that Second Officer heard Brandolese make a *separate* exculpatory statement from the one to which First Officer testified.) It may be that the State's closing argument was objectionable. *See State v. Riggs*, 520 S.W.3d 788, 802 (Mo. App. S.D. 2016) ("'A prosecutor is not permitted to comment on or refer to evidence or testimony that the court has excluded.'" (quoting *State v. Barlow*, 162 S.W.3d 135, 143 (Mo. App. W.D. 2005)). Brandolese has not asserted any separate claim based on the State's closing argument, however. And even if improper, the State's closing argument cannot establish the admissibility of Second Officer's deposition testimony under the rule of completeness.

Point IV is denied.

## Conclusion

The circuit court's denial of Brandolese's amended motion for post-conviction relief is affirmed.

_____
Alok Ahuja, Judge

All concur.

24